[Civ. No. 49733. First Dist., Div. One. Sept. 30, 1982.]

PHILIP B. SALIN, Plaintiff and Appellant, v.
PACIFIC GAS AND ELECTRIC COMPANY, Defendant and
Respondent.

186

COUNSEL

Richard B. Johnson, Briegleb, Johnson & Dzubur and Paul Peyrat for Plaintiff and Appellant.

Charles T. Van Deusen, James C. Logsdon, F. Ronald Laupheimer and Steven P. Burke for Defendant and Respondent.

OPINION

ELKINGTON, J.—In plaintiff Philip B. Salin's Code of Civil Procedure section 377 action for wrongful deaths against defendant Pacific Gas and Electric Company (PG&E), the superior court entered judgment on the pleadings in favor of PG&E as to the first and second causes of action of his second amended complaint. He has appealed from the judgment on the pleadings.

As relevant to the issues of the appeal, the first and second causes of action of the second amended complaint alleged the following.

"7. On or about January 28, 1974, plaintiff was an employee of defendant, PG&E, and was transferred and assigned by said defendant to supervise the Customer Service Section at said defendant's office located in the City of Oakland, County of Alameda, State of California. Said assignment entailed the supervision of a staff of persons charged with the collection and processing of delinquent accounts and the servicing of customer requests, inquiries and complaints. [¶] 8. Plaintiff, prior to the above-mentioned transfer to the Oakland office, told his superiors at PG&E that he did not want to go to the Oakland job and requested them to prevent his being sent there because the Oakland job was known as being chaotic and extremely difficult. [¶] 9. Prior to said transfer, it was represented to plaintiff by his superiors that the Oakland job was on a rotational basis and the plaintiff's tour of duty would be six (6) months only, and would be a prerequisite to future promotions in the company. [¶] 10. At the time of said transfer, plaintiff had been an employee of PG&E for over fifteen (15) years, but he had never had a job assignment of the magnitude and complexity of the Oakland job, a job which had a reputation for being one of the toughest in the company. [¶] 11. At the time of said transfer, plaintiff had only limited training in management and supervision. [¶] 12. Plaintiff's job entailed the following: [¶] A. Supervision of approximately 23 subordi-

nates and the processing of approximately 1,600 delinquent accounts per month; [¶] B. Preparation of numerous reports; [¶] C. Numerous personnel problems arising from absenteeism and incompetence of his subordinates, and problems arising from racial strife; [¶] D. Personal attention to complaints from customers on the phone and at the counter, some involving threats to his life because of discontinued PG&E service; [¶] E. An average of 9 to 10 hours per day of work on the job, plus an additional 2 to 3 hours per day of job-related homework, plus at least one full day of job-related homework every weekend; [¶] F. A workload that was never caught up and often days or weeks behind; [¶] G. Belligerence, low morale and low productivity of his subordinate work force; [¶] H. Inability to weed out or replace unproductive subordinates because of company policies and practices; [¶] I. Working in overcrowded, noisy and poorly ventilated facilities; [¶] J. Extensive pressure from superiors for a better performance; [¶] K. A work environment characterized by extreme pressure, resulting in extreme tension and anxiety on the part of plaintiff. [¶] 13. Plaintiff had a history of being a conscientious and loyal employee of the company. [¶] 14. On or about March 15, 1974, after being on the Oakland job for approximately forty-six (46) days (from January 28, 1974), plaintiff complained to his superiors of nervous exhaustion and inability to perform his job. His superiors told him to take a week off, which he did. During this week off, plaintiff consulted with his physician, who prescribed tranquilizers and diversion of work-related tension, insomnia and apprehension. Previous to the transfer to the Oakland job in January 1974, plaintiff's health had been good for the last several years. [¶] 15. When plaintiff returned to work after the above-mentioned week off, he was confronted with a large backlog of work, in addition to the usual workload. [¶] 16. During the four (4) weeks after said return to work, plaintiff, because of work-related pressures, moved into a worsening state of psychotic depression. [¶] 17. Defendant, PG&E, was aware that plaintiff had the type of job described in paragraph 12 above. Said defendant rated plaintiff's performance on said job as below average and was aware of plaintiff's inability to perform the job, despite his conscientious efforts to do so. [¶] 18. Defendant, PG&E, knew that plaintiff was ill-trained for the job and was not improving in his performance, despite said defendant's efforts to counsel him in the area of work delegation and employee relations. [¶] 19. Defendant, PG&E, was aware of the sudden decline in plaintiff's health and ability to do his job adequately after the said transfer to Oakland. [¶] 20. Defendant, PG&E, knew that plaintiff was unable to cope with his job and recommended that he take a week off to seek medical help because of job-

generated physical and mental fatigue, but only increased his workload when plaintiff returned to work. [¶] 21. Defendant, PG&E, knew after plaintiff had been in the Oakland job for only a short time that plaintiff lacked the skills to perform his supervisory functions and to avoid an increasingly degenerating situation in his area of responsibility on account of worsening productivity, belligerence and absenteeism among his subordinates, which situation caused great physical and mental stress to plaintiff. [¶] 22. Defendant, PG&E, knew that plaintiff was under extreme stress from heavy pressures applied upon plaintiff by his superiors to improve his performance, while said superiors knew from plaintiff's actual performance that he was unable to so improve. [¶] Defendant, PG&E, knew that, because of plaintiff's job pressures, he was suffering an increasing deterioration of body and mind. [¶] 24. Defendant, PG&E, did nothing to effectively stem said deterioration of plaintiff's body and mind. [¶] 25. Defendant, PG&E, had a duty of care to avoid placing plaintiff in a situation which caused plaintiff excessive deterioration of body and mind to the point of insanity where he would be a danger to himself or others. [¶] 26. Defendant, PG&E, breached said duty of care by knowingly maintaining excessive pressure on plaintiff, which pressure could, with reasonable foreseeability, result in plaintiff's insanity and consequent acts, while in his state of insanity, of harm to himself and others. [¶] 27. As a reasonable foreseeable consequence of said breach of duty of care, plaintiff did, in fact, become insane and shot and killed his seven-year-old daughter, Deanne Salin, and his four-year-old daughter, Angela Salin, while attempting to kill himself by a self-inflicted gunshot wound to his head."

By reason of the foregoing allegations, plaintiff sought general and special damages from defendant PG&E for the wrongful death of his daughters.

We have read and considered the record, and the arguments and briefs of the respective parties. Finding no error, we affirm the judgment. We now give our reasons.

■    The first of plaintiff's two appellate contentions is stated as follows: "Philip Salin *is not barred by the exclusive remedy provisions* of the Workers' Compensation Act because the *conditions of compensation do not exist* with regard to the death of Deanne and Angela Salin." (The italics are ours.)

We become concerned with Labor Code sections 3600 and 3601.

Labor Code section 3600 provides, as here relevant: "Liability for the compensation provided by this division, *in lieu of any other liability whatsoever to any person* ... shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment...." (Italics added.)

And Labor Code section 3601, in pertinent part, states: "(a) Where the *conditions of compensation exist*, the right to recover such compensation ... is, ... *the exclusive remedy* for [the] injury ... of an employee against the employer...." (Italics added.)

It appears to be conceded for purposes of the appeal that plaintiff's above-described psychotic episode "arose out of and in the course of his employment." (See § 3600.) Indeed, we are advised by plaintiff that the Workers' Compensation Appeals Board has already so determined. Thus, he agrees that "conditions of compensation" existed as to the *psychotic episode* and its ensuing injury, disability, and damages.

The issue then, as stated by plaintiff, is whether "*conditions of compensation*" existed with regard to his injury from the *death of his daughters*. If such conditions did exist, then, by virtue of Labor Code section 3601, plaintiff's "*exclusive remedy*" for such injury as he suffered, was that afforded by the workers' compensation law.

In a Code of Civil Procedure section 377 wrongful death action, it must, of course, be established that the "*proximate cause*" of the death was the negligence or other wrongful act of the defendant. (*Johnson v. Union Furniture Co.* (1939) 31 Cal.App.2d 234 [87 P.2d 917], *passim.*)

The essence of the instant action therefore, is that plaintiff suffered injury and damages from the wrongful death of his daughters, who were irresponsibly shot by him during his psychotic episode, which was "*proximately caused*" by the negligent or wrongful act of defendant PG&E.

Next, we observe a requirement of Labor Code section 3600, subdivision (c), that one of the requirements for the existence of "*conditions of compensation*" is that the injury be "*proximately caused*" by the worker's employment. Under this statute, it has long been the rule that to establish "*conditions of compensation*" under the workers' compensation law, there must be a *proximate* "causal connection between the employment and the injury, such connection need not be the sole cause; *it is*

*sufficient if it is a contributory cause.*" (Italics added; *Madin* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 90, 92 [292 P.2d 892]; *Employers etc. Ins. Co.* v. *Ind. Acc. Com.* (1953) 41 Cal.2d 676, 680 [236 P.2d 4].) "All that is required is that the employment be *one of the contributing causes* without which the injury would not have occurred." (Italics added; *Wickham* v. *North American Rockwell Corp.* (1970) 8 Cal. App.3d 467, 473 [87 Cal.Rptr. 563].)

Further, we note that it is not necessary in order to place workers' compensation liability upon an employer, "that the instrumentality of the employer was the last one in a chain of circumstances leading to the employee's injury." (See *Industrial Indem. Co.* v. *Ind. Acc. Com.* (1950) 95 Cal.App.2d 804, 811-812 [214 P.2d 41].)

In obtaining his workers' compensation award, plaintiff had necessarily alleged, and the board had necessarily determined, that he had suffered injury, disability, and damages from a psychotic episode, "*proximately caused*" by his employment.

From the foregoing, we must and do, conclude that the circumstances of plaintiff's employment was, at least, one of the "*proximate causes*" of the injury and damages suffered by him as a result of the wrongful death of his daughters. It follows, contrary to his contention, that "*conditions of compensation*" did exist and that accordingly, under Labor Code section 3601, his "*exclusive remedy*" was that authorized by the workers' compensation law. The superior court properly entered judgment against him on the pleadings.

■ We have considered plaintiff's argument, as we understand it, that in respect of his daughters' wrongful death, he stands in the position of a nonemployee third party who has suffered injury and damages as a result of the tortious act of an employer.

The point is answered by Labor Code section 3600 stating that: "Liability for compensation [by an employer to a worker is] in lieu of any other liability whatsoever *to any person....*" (Italics added.)

Moreover, we observe judicial holdings that where, following a work-related injury or death, conditions of compensation exist, third parties who have suffered prejudice or damages by virtue of such injury or death, are barred from recovery in actions at law against the employer.

California, as do most, if not all of the states of the union, follows the "'broader view of the exclusion of liability on the part of the employer *to any person whatsoever* by reason of the injury accruing to the employee whether such person be a dependent or nondependent.'" (*Casaccia* v. *Green Valley Disposal Co.* (1976) 62 Cal.App.3d 610, 613 [133 Cal.Rptr. 295]; *Treat* v. *Los Angeles Gas, etc. Corp.* (1927) 82 Cal. App. 610, 616 [256 P. 447]; italics added.) Recognizing this rule, plaintiff concedes, as he must, that: "A series of cases apply the exclusive remedy rule where the alleged injury stems directly from the employee's injury. For example, a wife is barred from damages for loss of consortium arising from her employee-husband's work-related injury. *Casaccia* v. *Green Valley Disposal Co.* (1976) 62 Cal.App.3d 610; 133 Cal. Rptr. 295; *Williams* v. *State Compensation Ins. Fund* (1975) 50 Cal. App.3d 116; 123 Cal.Rptr. 812. A wife seeking damages for suffering emotional distress from observing her employee-husband's work-related death is barred by the rule. *Williams* v. *Schwartz* (1976) 61 Cal.App. 3d 628; 131 Cal.Rptr. 200. Nondependent parents of an employee cannot recover for his work-related death. *Treat* v. *Los Angeles Gas, etc., Corp.* (1927) 82 Cal.App. 610."

It follows that had plaintiff's daughters survived the injuries he had inflicted upon them, or had otherwise been damaged due to his employment-related mental condition, *they* would have had no cause of action against PG&E.

High authority also has stated: "[T]he Legislature, in passing the [wrongful death, Code Civ. Proc., § 377] statute on which this action is brought, intended to give an action to the representative of a person killed by negligence only where, had he survived, he himself, at the common law, could have maintained an action against the person guilty of the alleged negligence." (*Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 194 [288 P.2d 12, 289 P.2d 242].) If one injured by a tortious act may not himself recover from the tortfeasor, "then it follows that under established law governing wrongful death actions, his survivors may not recover in ... such an action." (*Cole* v. *Rush* (1955) 45 Cal.2d 345, 351 [252 P.2d 1], overruled on other grounds *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 167 [95 Cal.Rptr. 623, 486 P.2d 151].) And where in respect of such a negligent or tortious act of an employer, a legal defense would have existed in an action at law brought by an employee or third party victim, "it must be held to be a complete defense to any action for damages brought by his heirs or legal representatives against the em-

ployer on account of his death." (*Vinson* v. *Los Angeles Pac. R. R. Co.* (1905) 147 Cal. 479, 489 [82 P. 53].)

Thus, in respect of his right to bring a Code of Civil Procedure section 377 wrongful death action against his employer, as the heir or personal representative of his daughters, plaintiff here stands "in their shoes" with such rights, and only such rights, they would have had, had they survived. (*Smith* v. *Schwartz* (1939) 35 Cal.App.2d 659, 664 [96 P.2d 816].)

Since, as we conclude, plaintiff's remedy, if any, must be found in the workers' compensation law, it becomes unnecessary to consider and determine other points and arguments of the parties, including PG&E's contention of a lack of foreseeability of, and thus nonliability for, the tragic eventuality which here occurred.

The judgment on the pleadings is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied October 26, 1982, and appellant's petition for a hearing by the Supreme Court was denied December 1, 1982. Newman, J., did not participate therein.