[No. S057064. Oct. 30, 1997.]

MIKAYLA M. SNYDER, a Minor, etc. et al., Plaintiffs and Appellants, v. MICHAEL'S STORES, INC., et al., Defendants and Respondents.

## Counsel

Miller, Brodsky & Baskin, Brodsky, Baskin & Shapiro, Eugene A. Brodsky, Brendan P. Brewer, Fancher & Wickland and Paige Leslie Wickland for Plaintiffs and Appellants.

Patricia A. Shiu, Judith E. Kurtz and Joannie C. Chang as Amici Curiae on behalf of Plaintiffs and Appellants.

Crabtree, Schmidt, Zeff, Jacobs & Farrar, Thomas D. Zeff, E. Daniel Farrar, Morrison & Foerster, Robert A. Naeve, John Sobieski and Robert J. Keenan for Defendants and Respondents.

Cook & Roos, John C. Cook and Michael E. Wilbur as Amici Curiae on behalf of Defendants and Respondents.

## Opinion

**WERDEGAR, J.**—Plaintiff Mikayla M. Snyder, a minor, alleges she was injured *in utero* when her mother, Naomi Snyder, breathed carbon monoxide gas in amounts toxic to both Naomi and Mikayla. The injury occurred at Naomi's workplace, a store owned and operated by defendant Michael's Stores, Inc., during Naomi's employment. The trial court granted Michael's Stores' demurrer on the ground the action was barred by Labor Code sections 3600-3602,[1] providing that workers' compensation proceedings are the exclusive remedy for injuries to employees arising out of their employment. The court so ruled under the compulsion of *Bell* v. *Macy's California* (1989) 212 Cal.App.3d 1442 [261 Cal.Rptr. 447] (*Bell*), which held fetal injuries are, as a matter of law, derivative of injury to the pregnant mother. (*Id.* at pp. 1453-1454.) The Court of Appeal in the present case reversed, explicitly rejecting *Bell*'s rationale and holding.

We agree with the appellate court below and will affirm its judgment. Section 3600 bars personal injury actions against an employer only "for any injury sustained by his or her employees arising out of and in the course of the employment." Mikayla's action is for her own injuries, not her mother's. The trial court therefore should have overruled Michael's Stores' demurrer.

[1]All further unspecified statutory references are to the Labor Code.

## Factual and Procedural Background

In reviewing a dismissal following the trial court's sustaining of a demurrer, we take the properly pleaded material allegations of the complaint as true; our only task is to determine whether the complaint states a cause of action. (*ABC Internat. Traders, Inc.* v. *Matsushita Electric Corp.* (1997) 14 Cal.4th 1247, 1253 [61 Cal.Rptr.2d 112, 931 P.2d 290]; *Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

Plaintiffs are Mikayla Snyder, a minor, by and through Naomi Snyder, her mother and guardian ad litem, Naomi Snyder personally, and David Snyder, Mikayla's father. Defendants are Michael's Stores, Inc., and Dennis Cusimano, the manager of the store where Naomi worked (hereafter collectively Michael's). (Two additional nonemployer defendants are not involved in this appeal.) Mikayla seeks damages for her physical injuries resulting from Michael's negligence; Naomi and David seek economic damages for the increased medical, educational and other expenses they have incurred and will incur due to Mikayla's physical injuries.

Plaintiffs allege that on October 2, 1993, Michael's negligently allowed a janitorial contractor to operate a propane-powered floor-buffing machine in the store without adequate ventilation, resulting in hazardous levels of carbon monoxide. Several customers and employees fainted from the fumes. Some, including Naomi, were taken to the hospital with symptoms of nausea, headaches and respiratory distress. Plaintiffs allege that both Naomi and Mikayla, who was then *in utero*, were exposed to toxic levels of carbon monoxide, which impairs the ability of red blood cells to transport oxygen. As a result, Mikayla suffered permanent damage to her brain and nervous system, causing her to be born with cerebral palsy and other disabling conditions.

The trial court sustained Michael's demurrer without leave to amend, citing *Bell, supra*, 212 Cal.App.3d 1442, as binding, and dismissed the action as to Michael's. The Court of Appeal reversed as to Mikayla's cause of action and her parents' cause of action for Mikayla's expenses of treatment and care. Because Mikayla's injuries were not derivative of Naomi's, but the result of her own exposure to toxic levels of carbon monoxide, the Court of Appeal reasoned, the exclusive remedy provisions of the workers' compensation law (§§ 3600-3602) were not applicable to Mikayla's injuries. Hence, neither Mikayla's cause of action for her own injuries nor her parents' cause of action for the expenses of her treatment was barred by those provisions.

We granted Michael's petition for review in order to resolve the conflict between the appellate decision in this case and that in *Bell*.

## Discussion

That Mikayla's complaint would state a cause of action had she been negligently exposed to toxic fumes outside the context of her mother's employment is undisputed. ■ Under California law, "[a] child conceived, but not yet born, is deemed an existing person, so far as necessary for the child's interests in the event of the child's subsequent birth." (Civ. Code, § 43.1.) The quoted provision, originally enacted in 1872 as Civil Code section 29, gives a child the right to maintain an action in tort for *in utero* injuries wrongfully or negligently caused by another, a right that did not exist at common law. (*Young* v. *Haines* (1986) 41 Cal.3d 883, 892 [226 Cal.Rptr. 547, 718 P.2d 909]; *Scott* v. *McPheeters* (1939) 33 Cal.App.2d 629, 631-633 [93 P.2d 562].) In light of this authority, Michael's does not contend that, the workers' compensation law aside, Mikayla's complaint fails to state a cause of action for her prenatal injuries.

■ The only question presented, therefore, is whether fetal injuries occurring in the mother's workplace are remediable solely, if at all, through the workers' compensation system. We begin with the statutes establishing the exclusive jurisdiction of that system. Section 3600, subdivision (a), setting forth the conditions of compensation under the workers' compensation system, provides: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as otherwise specifically provided . . . , shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur: . . ." Section 3602 provides, in relevant part: "(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee or his or her dependents against the employer . . . ." In terms similar to those of section 3602, section 3601 provides that, for a covered injury, the employee generally does not have a civil cause of action against a fellow employee.

A fundamental condition of compensation under section 3600 and, hence, a fundamental premise of the exclusivity provided in all three sections, is that the compensation sought is for an injury to an employee. In some circumstances, however, the bar on civil actions based on injuries to employees extends beyond actions brought by the employees themselves. The employer's compensation obligation is "in lieu of any other liability whatsoever *to any person*" (§ 3600, italics added), including, but not limited to,

the employee's dependents (§ 3602) for work-related injuries to the employee. This statutory language conveys the legislative intent that "the work-connected injury engender[] a single remedy against the employer, exclusively cognizable by the compensation agency." (*Williams* v. *State Compensation Ins. Fund* (1975) 50 Cal.App.3d 116, 122 [123 Cal.Rptr. 812].)

Based on the statutory language, California courts have held workers' compensation proceedings to be the exclusive remedy for certain third party claims deemed collateral to or derivative of the employee's injury. Courts have held that the exclusive jurisdiction provisions bar civil actions against employers by nondependent parents of an employee for the employee's wrongful death (*Treat* v. *Los Angeles Gas etc. Corp.* (1927) 82 Cal.App. 610, 615-616 [256 P. 447]), by an employee's spouse for loss of the employee's services (*Gillespie* v. *Northridge Hosp. Foundation* (1971) 20 Cal.App.3d 867, 868-870 [98 Cal.Rptr. 134]) or consortium (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 162-163 [233 Cal.Rptr. 308, 729 P.2d 743]; *Casaccia* v. *Green Valley Disposal Co.* (1976) 62 Cal.App.3d 610, 612-613 [133 Cal.Rptr. 295]; *Williams* v. *State Compensation Ins. Fund*, *supra*, 50 Cal.App.3d at p. 123), and for emotional distress suffered by a spouse in witnessing the employee's injuries (*Cole* v. *Fair Oaks Fire Protection Dist.*, *supra*, 43 Cal.3d at p. 163; *Williams* v. *Schwartz* (1976) 61 Cal.App.3d 628, 631-634 [131 Cal.Rptr. 200]). It was primarily on the " 'derivative' injury doctrine" drawn from these cases (*Bell*, *supra*, 212 Cal.App.3d at pp. 1453-1454) that the *Bell* court relied in holding fetal injuries were barred by the exclusive remedy provisions. (*Id.* at pp. 1452-1455.) As will appear, we agree with plaintiffs that the *Bell* court misapplied the rule the cited decisions drew from the statutory language.

In *Bell*, a pregnant worker complained, during work, of severe abdominal pain. A nurse provided on premises by the employer misdiagnosed the worker's condition as gas pains and delayed calling for an ambulance. When the mother was finally taken to the hospital, she was found to have suffered a ruptured uterus, and her baby, delivered live by Cesarean section, had suffered consequential injuries including brain damage. Evidence accepted by the appellate court for purposes of the appeal from summary judgment in favor of the employer showed that the nurse's delay in calling an ambulance caused a significant portion of the fetal injuries. (*Bell*, *supra*, 212 Cal.App.3d at pp. 1446-1447.)

The appellate court concluded the derivative injury rule barred the tort claims of the child (called Baby Freytes in the opinion) because the child's prenatal injury "*was a collateral consequence of the treatment of Bell* [the

mother]." (*Bell, supra,* 212 Cal.App.3d at p. 1453, italics added.) "[*B*]*ecause the injuries to Baby Freytes were the direct result of Macy's work-related negligence towards Bell, they derived from that treatment and are within the conditions of compensation of the workers' compensation law.*" (*Ibid.,* italics added.) More generally, the *Bell* majority reasoned that, even if the employee mother was not herself injured, a "central physical fact . . . compels application of the [derivative injury] doctrine: that the fetus *in utero* is inseparable from its mother. *Any injury to it can only occur as a result of some condition affecting its mother. When, as in the case at bench, the condition arises in the course of employment, the derivative injury doctrine would apply.*" (*Id.* at p. 1453, fn. 6, italics added.)

The above italicized passages clearly reveal the *Bell* majority's critical error. ▮ Assuming it true that all fetal injuries occur as a result of some maternal "condition," to conclude the derivative injury rule applies to all such fetal injuries occurring in the maternal workplace is a non sequitur. Neither the statutes nor the decisions enunciating the rule suggest workers' compensation exclusivity extends to all third party claims deriving from some "condition affecting" the employee. Nor is a nonemployee's injury collateral to or derivative of an employee injury merely because they both resulted from the same negligent conduct by the employer. The employer's civil immunity is not for all liability resulting from negligence toward employees, but only for all liability, to any person, deriving from an employee's work-related *injuries.* (§ 3600.) In the words of the dissenting justice in *Bell,* the derivative injury rule governs cases in which "the third party cause of action [is] derivative of the employee injury in the purest sense: It simply *would not have existed in the absence of injury to the employee.*" (*Bell, supra,* 212 Cal.App.3d at p. 1456 (conc. and dis. opn. of White, P. J.).) As plaintiffs' attorney explained in remarks at oral argument, the rule applies when the plaintiff, in order to state a cause of action, *must* allege injury to another person—the employee.

In barring certain third party civil actions, the derivative injury cases do not depart from the language of section 3600; they merely apply the statutory language to actions that are necessarily dependent on the existence of an employee injury. In *Treat* v. *Los Angeles Gas etc. Corp.* the parents sought their own damages for the work-related death of their minor son. (82 Cal.App. at p. 613; see Code Civ. Proc., § 376.) The court held this claim within the exclusivity rule because it existed "by reason of the injury accruing to the employee." (82 Cal.App.3d at p. 616.) In a similar way, claims for loss of services or consortium by a nonemployee spouse are necessarily dependent on the employee injury; the claim could not exist without an injury to the employee spouse. In *Cole* v. *Fair Oaks Fire*

*Protection Dist.*, *supra*, 43 Cal.3d at page 162, it is true, we acknowledged that consortium claims are not "merely derivative or collateral to the spouse's cause of action," but at the same time we held the exclusivity provisions applied because the consortium claim is "based on the physical injury or disability of the spouse." (*Id.* at p. 163.) While the losses for which damages are sought in a consortium action may properly be characterized as "separate and distinct" from the losses to the physically injured spouse (*Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 405 [115 Cal.Rptr. 765, 525 P.2d 669]), the former are unquestionably dependent, legally as well as causally, on the latter. One spouse cannot have a loss of consortium claim without a prior disabling injury to the other spouse.

Similarly, a claim for negligent or intentional infliction of emotional distress, based on the plaintiff's having witnessed the physical injury of a close relative, is logically dependent on the prior physical injury. Thus the claim is "due to the employee's injury" (*Cole* v. *Fair Oaks Fire Protection Dist.*, *supra*, 43 Cal.3d at p. 163), and the action is barred as "deriv[ing] from injuries sustained by an employee in the course of his employment." (*Williams* v. *Schwartz*, *supra*, 61 Cal.App.3d at p. 634.)[2]

The question the *Bell* court should have asked, therefore, was not whether Baby Freytes's injuries resulted from the employer's negligent treatment of Bell or from "some condition affecting" Bell (*Bell*, *supra*, 212 Cal.App.2d at p. 1453 & fn. 6), but, rather, whether Baby Freytes's claim was legally dependent on Bell's work-related *injuries*. From the appellate opinion, no evidence of such dependence appears. Although the fetal injuries resulted in part from the mother's ruptured uterus, the appellate court and the parties all assumed that "Bell's ruptured uterus was unrelated to her employment save only that it occurred during working hours and on Macy's premises." (*Id.* at p. 1447.) As to the nurse's delay in summoning an ambulance, the majority's recitation of the evidence indicates simply that the delay "caused significant injury to Baby Freytes" (*ibid.*); nothing in the majority opinion suggests Baby Freytes's claim depended conceptually on injuries the delay caused to Bell. The majority, in other words, says nothing to contradict the dissent's assertion that "the nurse's negligence caused an injury to Baby Freytes which was not dependent on or derived from any injury to the mother." (*Id.* at p. 1456 (conc. and dis. opn of White, P. J.).)

---

[2]One Court of Appeal has gone farther, applying the derivative injury rule to an action by an employee for wrongful deaths of the employee's children, where the employee alleged he killed his children as a result of insanity caused by working conditions. (*Salin* v. *Pacific Gas & Electric Co.* (1982) 136 Cal.App.3d 185, 190-193 [185 Cal.Rptr. 899].) While we have no occasion here to rule on the correctness of the decision in *Salin*, we observe that sections 3600 through 3602 do not directly support the *Salin* court's extension of the derivative injury rule to third party injuries allegedly caused by an injured employee's postinjury acts.

The *Bell* court's observation that "the fetus *in utero* is inseparable from its mother" (*Bell, supra,* 212 Cal.App.3d at p. 1453, fn. 6), while tautologically true, falls far short of dictating application of the derivative injury rule to all fetal injuries. Biologically, fetal and maternal injury have no necessary relationship. The processes of fetal growth and development are radically different from the normal physiological processes of a mature human. Whether a toxin or other agent will cause congenital defects in the developing embryo or fetus depends heavily not on whether the mother is herself injured, but on the exact stage of the embryo or fetus's development at the time of exposure, as well as on the degree to which maternal exposure results in embryonic or fetal exposure. (See 7 Encyclopedia of Human Biology (1991) Human Teratology, pp. 411-418.) Even when the mother *is* injured, moreover, the derivative injury rule does not apply unless the child's claim can be considered merely collateral to the mother's work-related injury, a conclusion that rests on the legal or logical basis of the claim rather than on the biological cause of the fetal injury. For all the above reasons, we disapprove both the result and reasoning of the *Bell* decision, 212 Cal.App.3d 1442, on exclusivity of workers' compensation as a remedy for fetal injuries.

 Having clarified the scope of the derivative injury doctrine, we turn to the case at bench. Michael's demurrer should have been sustained only if the facts alleged in the complaint showed either that Mikayla was seeking damages for Naomi's work-related injuries or that Mikayla's claim necessarily depended on Naomi's injuries. (See *Arriaga* v. *County of Alameda* (1995) 9 Cal.4th 1055, 1060 [40 Cal.Rptr.2d 116, 892 P.2d 150] [complaint subject to demurrer only if it affirmatively alleges facts showing workers' compensation is exclusive remedy].) The facts alleged here did not so demonstrate. Plaintiffs alleged simply that both Naomi and Mikayla were exposed to toxic levels of carbon monoxide, injuring both. Mikayla sought recompense for her own injuries. Since Mikayla was not herself breathing at the time of the accident, that her exposure to carbon monoxide occurred through Naomi's inhalation of the fumes and the toxic substance conveyed to her through the medium of her mother's body can be conceded. As we have emphasized above, however, the derivative injury doctrine does not bar civil actions by all children who were harmed *in utero* through some event or condition affecting their mothers; it bars only attempts by the child to recover civilly for the mother's own injuries or for the child's legally dependent losses. Mikayla does not claim any damages for injury to Naomi. Nor does the complaint demonstrate Mikayla's own recovery is legally dependent on injuries suffered by Naomi. For that reason, sections 3600 through 3602 did not defeat Mikayla's cause of action for her own injuries (the first cause of action) or her parents' claim for consequential losses due to Mikayla's injuries (the third cause of action).

Our conclusion the derivative injury rule does not apply in these circumstances accords with the view of every other court that has considered the question, with the exception of *Bell.* Thus, in *Ransburg Industries* v. *Brown* (Ind.Ct.App. 1995) 659 N.E.2d 1081 (hereafter *Ransburg Industries*), a child was severely injured *in utero,* and died shortly after birth, as a result of his mother having inhaled paint fumes in her workplace. The Indiana workers' compensation law precludes all civil actions by employees' family members "on account of" the employee's injury (Ind. Code, § 22-3-2-6, quoted in *Ransburg Industries, supra,* 659 N.E.2d at p. 1082), and Indiana courts had previously recognized the derivative injury doctrine as applicable to claims for loss of consortium (*id.* at pp. 1084-1085). Nevertheless, the appellate court concluded the parents' wrongful death suit for the son's death "is not derivative of his mother's claim for injuries. Unlike a loss of consortium claim, the action does not seek compensation for damages suffered by the claimant which arose on account of the injury sustained by the employee. Rather, this action seeks to recover for the injury sustained by Brandon himself while *in utero,* which ultimately resulted, it is claimed, in Brandon's death." (*Id.* at pp. 1085-1086, italics added.)

Similarly, in *Pizza Hut of America, Inc.* v. *Keefe* (Colo. 1995) 900 P.2d 97, the Colorado Supreme Court rejected application of the derivative injury doctrine to prenatal injuries allegedly suffered as a result of the mother's performance of various work tasks negligently ordered by her employer. "[T]he injury to the child was separate and distinct and subjects the employer to separate liability. In this case, the child's right of action arises out of and on account of her own personal injuries, and not any injury suffered by the mother." (*Id.* at p. 101.) That the mother also claimed injury from the same events did not alter the court's conclusion: "The exclusivity provisions do not constitute a bar to a claim asserted by a third-party victim, even though both the employee and the victim were injured together as a result of the same negligent act in a single transaction." (*Ibid.*)

Substantially the same analysis led the court in *Cushing* v. *Time Saver Stores, Inc.* (La.Ct.App. 1989) 552 So.2d 730 to conclude that a child's suit for *in utero* brain injuries, allegedly caused by his mother's accidental workplace fall, was not barred by an exclusive remedy provision that, like our own section 3600, granted the employer civil immunity in actions "for" an employee's compensable injury. (552 So.2d at p. 731, quoting La. Rev.Stat. § 23:1032.) While prior Louisiana decisions had barred civil actions for third party derivative injuries, in all those cases the claimant's injury "hinged upon the injuries of the employee. Because Dad or Mom suffered an injury, the family suffered a loss based on that injury." (552 So.2d at p. 732.) The collateral loss might be economic, as in a claim for loss

of support, or intangible, as in a claim for loss of consortium based on the employee's inability to continue participating in family life. (*Id.* at pp. 731-732.) In contrast, the fetal injuries at issue in *Cushing* were not logically derivative of the mother's injury: "Whether Mom is there to continue bringing home a paycheck or to participate in the child's life has no relevance to this child's alleged brain damage." (*Id.* at p. 732.)

Other courts considering the issue have reached the same conclusion. (See *Thompson* v. *Pizza Hut of America, Inc.* (N.D.Ill. 1991) 767 F.Supp. 916, 918 [Illinois law: child's suit for *in utero* injuries, allegedly caused by mother's workplace exposure to carbon monoxide and other fumes, not barred by Illinois workers' compensation law]; *Namislo* v. *Akzo Chemicals, Inc.* (Ala. 1993) 620 So.2d 573, 575 [child's claim for *in utero* mercury poisoning at mother's workplace not barred]; *Jackson* v. *Tastykake, Inc.* (1994) 437 Pa.Super. 34 [648 A.2d 1214, 1216-1217] [injury to child, whose mother went into premature labor at workplace, not within exclusive remedy provision]; *Hitachi Chem. Electro-Products* v. *Gurley* (1995) 219 Ga.App. 675 [466 S.E.2d 867, 869] [child's suit for *in utero* injuries caused by exposure to chemicals in parent's workplace not barred].)[3]

 The merit or lack thereof in *Bell*'s reasoning aside, Michael's maintains the failure of the Legislature to abrogate that decision in the intervening eight years, coupled with its amendment of sections 3600 and 3602 in other respects, constitutes an implied endorsement of *Bell*'s holding. We discern no cause to find a presumption of legislative approval in the present case. *Bell* was a single decision on a question of first impression, not a "consistent and long-standing judicial interpretation" of the statutory language. (*People* v. *Escobar* (1992) 3 Cal.4th 740, 750 [12 Cal.Rptr.2d 586, 837 P.2d 1100].) Moreover, the intervening amendments to sections 3600 and 3602 have been to other portions of the statutes (see Historical and Statutory Notes, 44A West's Ann. Lab. Code (1997 pocket supp.) foll. § 3600, pp. 34-35; *id.*, foll. § 3602, p. 46); they did not constitute reenactments of the language construed in *Bell*. (See *People* v. *Escobar, supra,* 3

---

[3]Michael's reply brief cites several federal cases barring civil suits for prenatal injuries to children of military personnel in active service. (See, e.g., *Lombard* v. *United States* (D.C. Cir. 1982) 690 F.2d 215 [233 App.D.C. 102, 69 A.L.R.Fed. 921]; *Monaco* v. *United States* (9th Cir. 1981) 661 F.2d 129; *Irvin* v. *U.S.* (6th Cir. 1988) 845 F.2d 126; *Scales* v. *United States* (5th Cir. 1982) 685 F.2d 970.) These cases are readily distinguishable as resting on considerations irrelevant to interpretation of California's workers' compensation law, in particular the distinctively federal character of the relationship between the government and members of its armed forces and the threat to military discipline if a soldier could, in a civil suit, challenge the acts and orders of his or her superior officers. (See *Stencel Aero Engineering Corp.* v. *U.S.* (1977) 431 U.S. 666, 671-672 [97 S.Ct. 2054, 2057-2058, 52 L.Ed.2d 665].) In addition, we observe that the federal courts are not unanimous on this question; at least two courts have reached the opposite result, allowing the children's suits, on similar facts. (See *Romero by Romero* v. *U.S.* (4th Cir. 1992) 954 F.2d 223, 225-227; *Del Rio* v. *U.S.* (11th Cir. 1987) 833 F.2d 282, 287-288.)

Cal.4th at p. 751.) Under these circumstances, the claim of legislative inaction is truly a " ' " " 'weak reed upon which to lean.' " ' " (*Ibid.*)[4]

As an alternative ground, distinct from the derivative injury doctrine, for bringing Mikayla's injuries within sections 3600 to 3602, Michael's argues Mikayla herself—*in utero*—was an employee of Michael's. This novel theory,[5] on first encounter merely implausible, proves on further examination to be utterly without merit. Although we have interpreted the statutory definitions of employee liberally to extend beyond traditional contracts of hire (see, e.g., *Arriaga* v. *County of Alameda, supra*, 9 Cal.4th at pp. 1061-1063; *Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 776-783 [100 Cal.Rptr. 377, 494 P.2d 1] (*Laeng*)), we have never suggested a claimant might be considered an employee while failing to satisfy the basic statutory requirement of being "in the service of" (§ 3351) or "rendering service for" (§ 3357) another. Indeed, in *Laeng, supra,* 6 Cal.3d at page 783, we reaffirmed that "rendition of such service [is] a crucial criterion of liability under the act." Michael's, of course, does not and cannot assert that Mikayla, before her birth, rendered Michael's any service.

In *Laeng* we held that a job applicant, injured while performing a physical agility test required by the potential employer, was in the service of the potential employer and was therefore its employee at the time of the injury, even though the applicant had, of course, not yet been hired. We reasoned that the "tryout" was performed for the benefit of the employer, which was thereby able to hire better qualified workers. (*Laeng, supra,* 6 Cal.3d at pp. 781-782.) In addition, we observed that the applicant at a tryout is also in the service of the employer in that the applicant "subjects himself to the employer's control" and "undertak[es] a 'special risk' of employment." (*Id.* at pp. 782-783.)

Extracting these phrases from their factual context, Michael's argues the fetus, too, is under the employer's control (because the mother is under her

---

[4]The parties draw conflicting inferences from the fact that in 1991 the Legislature passed a bill, which was vetoed by the Governor, to abrogate *Bell*. (3 Assem.J. (1991-1992 Reg. Sess.) p. 4919 (Oct. 17, 1991).) On reflection, we are unable to draw any relevant inference from this event; it provides no guidance on whether the political branches approved or disapproved of *Bell*'s holding as an interpretation of the existing statutes.

[5]Michael's insists its fetal employment theory is not new, having been accepted by the Nevada Supreme Court in *State Indus. Ins. System* v. *Porter* (1987) 103 Nev. 170 [734 P.2d 729]. Not so. The court in *Porter* merely upheld the finding of a workers' compensation appeals officer that a *mother* whose industrial injury caused premature delivery of her child was entitled to payment for medical expenses resulting from the accident, including "short-term neonatal care of the child." (*Id.* at p. 171 [734 P.2d at p. 729].) Nowhere in its two-page *per curiam* opinion did the court suggest that the child was, *in utero,* an employee, or that the child himself was entitled to any benefits under Nevada's workers' compensation law.

employer's control) and subject to the special risks of the workplace (again because the mother is subject to these risks). Wordplay can only take one so far, however; the language of an opinion is not some kind of magical putty, to be stretched as long and thin as needed for the task at hand. The question in *Laeng* was whether the "inchoate" employment relationship (*Laeng, supra*, 6 Cal.3d at p. 783) between applicant and potential employer was sufficient to bring the applicant within workers' compensation. We held it was because "given the act's purpose of protecting individuals from any special risks inherent in employment, the act's coverage may at times properly precede the actual formation of an employment contract when those special risks are present at an earlier stage." (*Id.* at p. 782.) The relationship between Michael's and Mikayla at the time of the latter's injury bore no relationship to that between applicant and potential employer. It was not an early stage of employment; in fact, no employment relationship existed between them, inchoate or otherwise.[6]

Finally, Michael's contends that permitting children to pursue civil actions for prenatal injuries suffered in their parents' workplaces exposes employers to "liability for injuries allegedly arising out of commonplace industrial accidents and thus defeats the 'compensation bargain.' " The *Bell* court expressed the same concern: "The range of common workplace injury that could result in injury or death to a fetus needs little exposition. Trips and falls, car accidents, explosions, fires, and other unfortunate but not un-heard-of incidents of employment all may cause serious injury or death to the unborn as well as its parent. Less obvious are cases of subtle poisoning by exposure to toxic substances, genetic damage caused by radiation, and the other numerous and cautionary byproducts of the Industrial Revolution." (*Bell, supra*, 212 Cal.App.3d at p. 1454.)

The concerns raised by Michael's may be substantial, but are more properly addressed to the Legislature than to this court. The "compensation bargain" to which Michael's alludes is between businesses and their *employees* and generally does not include third party injuries. The workers' compensation law ". . . imposes reciprocal concessions upon *employer* and *employee* alike, withdrawing from each certain rights and defenses available at common law . . . ." (*Williams* v. *State Compensation Ins. Fund, supra*, 50 Cal.App.3d at p. 122, italics added.) The employee's "concession" of a

---

[6]Apart from its reliance on *Laeng*, Michael's argues Mikayla was its employee at the time of her injury because "[a]t the time of an *in utero* injury, an unborn child has no physical or legal status separate from its mother, and thus an injury to it is tantamount to an injury to part of the 'employee'/mother." To the extent we understand it, this argument for barring a tort action for prenatal injuries by a later-born child appears inconsistent with Civil Code section 43.1, which, as earlier discussed, gives such a child the right to maintain a civil action for his or her injuries, independent of any action available to the mother.

common law tort action under sections 3600 to 3602 extends, as we have seen, to family members' collateral losses deriving from the employee's injury. Neither the statutory language nor the case law, however, remotely suggests that third parties who, because of a business's negligence, suffer injuries—logically and legally independent of any employee's injuries— have conceded their common law rights of action as part of the societal "compensation bargain." As the *Bell* court acknowledged, even close family members of employees are third parties entitled to sue when their claims are independent of and not collateral to an employee injury; the employer is not relieved of tort liability to such family members injured while visiting the work site. (*Bell, supra,* 212 Cal.App.3d at 1451; see, e.g., *Robbins* v. *Yellow Cab Co.* (1948) 85 Cal.App.2d 811, 813-814 [193 P.2d 956] [workers' compensation not exclusive remedy for plaintiff injured while picking up her husband's paycheck].)

Generally speaking, businesses, like other actors, must bear the costs of accidents caused by the negligent conduct of their activities; when the injured person is not an employee, and the person's claim does not derive from an employee's injury, the costs are assessed and recovered through the civil justice system. (Civ. Code, § 1714, subd. (a).) The third parties to whom businesses may be civilly liable include, of course, the conceived but unborn child of a nonemployee "in the event of the child's subsequent birth." (Civ. Code, § 43.1.) Nothing in sections 3600 to 3602, or in any other statutory source Michael's cites, suggests a legislative intent that prenatal injuries to the children of employees be any different.

Section 3600 provides civil immunity to an employer for liability "for any injury sustained by his or her employees arising out of and in the course of employment." As we have seen, the immunity so provided includes collateral or derivative losses to family members from employee injuries, but does not include logically independent claims by family members or other third parties. We cannot legitimately rewrite the statutory grant of immunity to include a particular class of such third party injuries (prenatal injuries to employees' children), any more than we could rewrite it to include, for example, a particular class of injuries arising outside the course of employment.

Our conclusion is reinforced if one considers the policy choices this court would have to make in formulating a rule of civil immunity for fetal injuries. Should the new rule of civil immunity be coupled with a provision giving injured children, or their parents, compensation through the workers' compensation system? The *Bell* court conceded the current workers' compensation system provides little if any compensation to parents for birth defects or

other harms their child suffers as a result of injury in the mother's workplace; of course, the system provides none to the child. (*Bell, supra,* 212 Cal.App.3d at p. 1455, fn. 7.)[7] If compensation is to be given, to whom should it be directed, what elements of loss should be included, and how should they be estimated? These are questions that only the political branches of government can answer.

Michael's points out that, under federal antidiscrimination law, employers are generally prohibited from implementing broad "fetal protection" policies excluding fertile women from potentially hazardous jobs. (*Automobile Workers* v. *Johnson Controls, Inc.* (1991) 499 U.S. 187, 206-207 [111 S.Ct. 1196, 1207-1208, 113 L.Ed.2d 158] (*Johnson Controls*).) Michael's suggests employees' children should therefore be treated differently than those of nonemployees because, while businesses can control most third party liability for workplace accidents by excluding nonemployees from the workplace, biology and federal antidiscrimination law prevent them from excluding the employee's child *in utero.* (See also *Pizza Hut of America, Inc.* v. *Keefe, supra,* 900 P.2d at p. 104 (dis. opn. of Rovira, C. J.) [making the same argument].)

Again, Michael's' argument is directed at policy decisions beyond our realm of authority in a case of statutory interpretation. Our focus has been and must be on sections 3600 to 3602, not on what might be the fairest or economically most beneficial policy for the state to pursue in light of federal law. We observe, however, that the scope of the problem presented by *Johnson Controls* may be narrower than Michael's suggests.

Although real, the distinction between employees' children and others is easily overstated. Much of what businesses do is done, and must be done, in the presence of third parties, including pregnant women, thus putting the women's unborn children at risk for accidental injury and exposing the

---

[7]Michael's, apparently contesting this aspect of *Bell,* maintains that the workers' compensation system generally "does provide benefits which adequately compensate disabling, work-related, fetal injuries." The statutory sections Michael's cites, however, establish only that a mother might be compensated for medical costs (§ 4600) and permanent or temporary disability (§§ 4653, 4654, 4658) resulting from *her own* injuries; they do not indicate any benefits would be payable to the child or the parents for *the child's* prenatal injuries. (See *Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744, 752-753 [7 Cal.Rptr.2d 808, 828 P.2d 1195] [workers' compensation system compensates for medical treatment and occupational disability, but is not designed to compensate employee for all consequences of every workplace injury]; Blank, Fetal Protection in the Workplace (1993) pp. 123-126 [fetal injuries and other reproductive harms generally uncompensated by workers' compensation systems].) Even the reimbursement of parental expenses for "short-term neonatal care of the child" allowed in Nevada (*State Indus. Ins. System* v. *Porter, supra,* 103 Nev. at p. 171 [734 P.2d at p. 729]) falls far short of compensation for the type of lifelong disabilities alleged in this case.

business to possible civil liability. The same threats to fetal health identified in *Bell, supra,* 212 Cal.App.3d at page 1454, as risks to which an employee's child is subject—"[t]rips and falls, car accidents, explosions, fires . . . poisoning by exposure to toxic substances, genetic damage caused by radiation," etc.—can also cause prenatal injury to children of nonemployees. For example, Michael's, like most other retail and service establishments, necessarily conducts its business in the presence of nonemployees—customers —including pregnant women. According to the instant complaint, use of a propane-powered machine in the store, coupled with inadequate ventilation, resulted in carbon monoxide poisoning to "approximately 21 employees and customers." At least one of the employees, Naomi, was pregnant. But one or more of the affected customers could also have been pregnant, and her child could have suffered the same injuries as Mikayla allegedly did. Michael's could no more exclude fertile female customers than it could exclude fertile female employees.

Regardless of whether *Bell*'s rule stands or falls, therefore, a retail store cannot operate without running the risk of civil liability if its negligence causes a fetal injury. In the same way, businesses in such diverse and populous categories as hospitals and clinics, common carriers, trucking companies, theaters, law firms, health clubs and restaurants all must conduct significant portions of their activities with, or in the presence of, customers and other nonemployees, including pregnant women. None of these businesses can, by controlling who comes into the workplace, preclude the possibility they will negligently cause prenatal injuries to a nonemployee's child. All they can do is attempt to conduct their businesses safely and insure themselves against the remaining risks of accident. The *Bell* rule thus makes at most a quantitative, not a qualitative, difference to the exposure of businesses to tort liability for fetal injury. Neither a flood of new personal injury cases nor a greatly increased pressure to discriminate against women in employment would seem, as to these employers, a likely outcome of overruling *Bell.*

There may be certain businesses, primarily manufacturers, that conduct the major part of their operations away from the presence of customers and other members of the public *and* routinely expose their employees, through these operations, to agents causing fetal injury. Even as to these employers, however, it is not clear overruling *Bell* will create significant new tort liability. As the high court explained in *Johnson Controls,* federal antidiscrimination law would likely preempt state tort law to the extent the employer's actions were required by federal law. (*Johnson Controls, supra,* 499 U.S. at p. 209 [111 S.Ct. at pp. 1208-1209].) Thus, the possibility that an employer that merely allowed women to occupy jobs involving exposure to

teratogens, while fully informing them of the risks, would face tort liability "seems remote at best." (*Id.* at p. 208 [111 S.Ct. at p. 1208].) Liability could rest only on the employer's actual negligence in exposing the pregnant employee's unborn child to an unreasonable risk of injury. Whether society would enjoy a net benefit by barring tort actions in such cases is a question we will not even try to answer.

## CONCLUSION

Up to this time, the Legislature has made workers' compensation the exclusive remedy for work-related injuries to employees and for collateral losses deriving from those injuries, but not for legally independent claims by nonemployees for their own injuries. The decision whether to go beyond that point, to provide civil immunity—and perhaps a corresponding remedy in the workers' compensation system—for a particular class of such independent third party injuries, is not ours to make.

The judgment of the Court of Appeal is affirmed.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Chin, J., and Brown, J., concurred.