[No. A127775. First Dist., Div. Five. May 16, 2011.]

UNION OF AMERICAN PHYSICIANS AND DENTISTS, Plaintiff and Respondent, v.
EDMUND G. BROWN, JR., as Governor, etc., et al., Defendants and Appellants.

692

## COUNSEL

K. William Curtis, Warren C. Stracener, Linda A. Mayhew, Will M. Yamada; Kronick, Moskovitz, Tiedemann & Girard, David W. Tyra, Kristianne T. Seargeant and Meredith H. Packer for Defendants and Appellants.

Davis, Cowell & Bowe, Andrew J. Kahn and Adam J. Zapala for Plaintiff and Respondent.

Tony West, United States Assistant Attorney General, Joseph P. Russoniello, United States Attorney, Mark B. Stern, Sarang V. Damle and Daniel J. Lenerz for the United States of America as Amicus Curiae on behalf of Plaintiff and Respondent.

Barbara A. Jones and Michael R. Schuster for AARP as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**JONES, P. J.**—The Union of American Physicians and Dentists (UAPD) filed a petition for writ of mandate seeking to invalidate the two-day-a-month unpaid furlough program for state employees that was instituted by Governor Arnold Schwarzenegger on December 19, 2008. The trial court granted the petition ruling the two-day-a-month furlough program and the subsequently expanded three-day-a-month unpaid furlough program that was put in place by the Governor on July 1, 2009, were invalid because they violated certain statutes. The Governor now appeals contending the trial court interpreted the applicable statutes incorrectly. Applying the principles articulated by our Supreme Court in *Professional Engineers in California Government v. Schwarzenegger* (2010) 50 Cal.4th 989 [116 Cal.Rptr.3d 480, 239 P.3d 1186] (*Professional Engineers*) we agree and will reverse the trial court's judgment.

## I. *Factual and Procedural Background*

In *Professional Engineers, supra*, 50 Cal.4th at pages 1000–1008, our Supreme Court described in detail the economic factors that led to the furlough programs that are at issue in this case. We need not repeat that description here other than to note that in the fall of 2008, the State of California was facing an almost unprecedented financial crisis. In November 2008, the Department of Finance reported that the state faced a revenue shortfall of $11.2 billion for the 2008–2009 fiscal year and stated that " '[i]f no action is taken to reduce spending, increase revenues, or a combination of both, the state will run out of cash in February and be unable to meet all of its obligations for the rest of the year.' " (*Id.* at p. 1001, quoting Dept. of Finance, Rep., Governor's Budget, Special Session 2008–2009, p. 1.)

The Governor proposed a variety of measures to address that financial crisis. Two of them are relevant here. First on December 19, 2008, the Governor issued an executive order that directed the Department of Personnel Administration (DPA) to " 'implement a furlough of represented state employees and supervisors for two days per month, regardless of funding source.' " (*Professional Engineers, supra*, 50 Cal.4th at p. 1003, italics omitted.) The program was to be effective from February 1, 2009, though June 30, 2010. Then, when the economic crisis continued to worsen, the Governor expanded the furlough program. On July 1, 2009, he issued another executive order that directed the DPA to adopt an amended plan "to implement a furlough of represented state employees for three days per month, regardless of funding source." The expanded furlough program ran from July 1, 2009, through June 30, 2010.

UAPD is the collective bargaining representative for nonmanagement physicians and dentists in state employment. In June 2009, UAPD filed a petition for writ of mandate challenging the legality of the furlough program. The petition named, as defendants, the Governor, the director of the DPA, the State Controller, and the directors of six different state departments and agencies who employed UAPD members.[1] UAPD alleged that to the extent its members were paid by sources other than the then General Fund, i.e.,

---

[1] The named defendants were the Governor, Arnold Schwarzenegger; David Gilb, the Director of the DPA; John Chiang, the State Controller; Cindy Ehnes, Director of the Department of Managed Health Care; Carrie Lopez, Director of the Department of Consumer Affairs; Tony Sauer, Director of the Department of Rehabilitation; David Maxwell-Jolly, Director of the State Department of Health Care Services; John A. Wagner, Director of the State Department of Social Services; and Kimberly Belshe, Director of the Department of Public Health.

All the defendants except the State Controller are appearing together in this appeal. Unless more specificity is needed, we will refer to the appearing defendants collectively as the Governor.

special funds that must by law be spent for a specific purpose, or the federal government which pays the salaries of certain state employees who perform federally mandated tasks, the furlough program was irrational and illegal.

The case proceeded to a trial[2] and on December 31, 2009, the court ruled the furlough programs were illegal. The court based its decision on two statutes. First the court found the furlough programs violated Government Code[3] section 19851[4] because they failed to take into account the varying needs of the different state agencies. As the court explained, "Each State agency has differing needs relating to its function and to the sources of its funding. Respondents' refusal to consider those varying needs of the different state agencies before ordering and implementing furloughs conflicts with the requirements of Section 19851." (Fn. omitted.)

Second, the court found the furlough programs violated section 16310.[5] The Governor had argued that even though furloughing special funds and federally funded employees does not save General Fund any money, that act was still rational because it allowed the General Fund to borrow money from the agencies for which those employees worked. The trial court rejected that justification finding it violated section 16310. The court ruled the mere fact that state agencies were closed three days per month was "at least a prima facie showing of interference with the object of the special fund agencies, specifically the agencies' ability to carry out their respective missions."

On February 22, 2010, the trial court conducted a hearing to determine what form of judgment should be entered. After hearing arguments from counsel, the court issued a judgment that ordered the Governor immediately

---

[2] This case was tried together with two similar cases that had been filed challenging the furlough programs. The court's rulings in those other cases are currently pending in two other divisions of this court.

[3] Unless otherwise indicated, all further section references will be to the Government Code.

[4] As is relevant here, section 19851, subdivision (a) states: "It is the policy of the state that the workweek of the state employee shall be 40 hours, and the workday of state employees eight hours, except that workweeks and workdays of a different number of hours may be established in order to meet the varying needs of the different state agencies."

[5] As is relevant here, section 16310, subdivision (a) states: "When the General Fund in the Treasury is or will be exhausted, the Controller shall notify the Governor and the Pooled Money Investment Board. The Governor may order the Controller to direct the transfer of all or any part of the moneys not needed in other funds or accounts to the General Fund from those funds or accounts, as determined by the Pooled Money Investment Board, including the Surplus Money Investment Fund or the Pooled Money Investment Account. All moneys so transferred shall be returned to the funds or accounts from which they were transferred as soon as there are sufficient moneys in the General Fund to return them. No interest shall be charged or paid on any transfer authorized by this section, exclusive of the Pooled Money Investment Account, except as provided in this section. *This section does not authorize any transfer that will interfere with the object for which a special fund was created . . . .*" (Italics added.)

to cease furloughing employees of the departments and agencies that had been named in the complaint. The court stated that its ruling was to include "all employees" of the named departments and agencies regardless of whether they were members of UAPD.

On February 26, 2010, the Governor filed this appeal.

Shortly after the appeal was filed, UAPD filed a motion to lift the automatic stay put in place by the appeal. On March 23, 2010, the trial court granted the motion in part ruling that the stay would be lifted "with respect to the prospective remedy requiring that Respondents cease and desist from further implementation of furloughs under the Governor's Executive Orders." The Governor then filed a petition for writ of supersedeas in this court to stay the trial court's March 23, 2010 order. On March 30, 2010, we stayed the trial court's order temporarily, and on April 12, 2010, we issued a writ of supersedeas staying the order pending the resolution of this appeal.

The parties filed their appellate briefs and this court commenced its review of the appeal. Then on October 4, 2010, our Supreme Court issued its decision in *Professional Engineers, supra,* 50 Cal.4th 989, and in so doing, addressed this area of the law and set forth analytical principles directly relevant to the issues before us. The pivotal issue in *Professional Engineers* was whether "the Governor on December 19, 2008, possessed authority to institute a mandatory furlough of represented state employees . . . ." (*Id.* at p. 1000.) Our Supreme Court ruled the Governor lacked that power. In the court's words, neither the "constitutional authority granted to [the Governor] by the California Constitution or the existing statutory provisions pertaining to the terms and conditions of state employment granted him or the DPA the authority unilaterally to impose a mandatory unpaid furlough on state employees." (*Id.* at p. 1041.) But the court also found subsequent actions of the Legislature dispositive in determining the validity of the Governor's 2008 two-day-a-month furlough program. The court ruled as follows: "In mid-February, 2009—shortly after the furlough program went into effect—the Legislature enacted, and the Governor signed, legislation that revised the Budget Act of 2008 . . . by, among other means, reducing the appropriations for employee compensation contained in the original 2008 Budget Act by an amount that reflected the savings the Governor sought to obtain through the two-day-a-month furlough program. The February 2009 legislation further provided that the specified reduction in the appropriations for employee compensation could be achieved either through the collective bargaining process or through 'existing administration authority.' That phrase, in the context in which the revised budget act was adopted and in light of the provision's legislative history, reasonably included the furlough program that

was then in existence and that had been authorized by the current gubernatorial administration. In particular, the bill analyses considered by the Legislature made specific reference to furlough-related reductions of employee compensation costs. Under these circumstances, we conclude that the Legislature's 2009 enactment of the revisions to the 2008 Budget Act operated to ratify the use of the two-day-a-month furlough program as a permissible means of achieving the reduction of state employee compensation mandated by the act. [¶] Accordingly, we conclude that the 2009 budget legislation validated the Governor's furlough program here at issue, and reject plaintiffs' challenge to that program." (*Professional Engineers, supra,* 50 Cal.4th at p. 1000.)

Given the obvious importance of the court's ruling in *Professional Engineers*, we ordered the parties to submit additional briefs discussing how that decision affected the issues presented in this case. Both parties have now filed those briefs and, in effect, reformulate their arguments to take into account the court's ruling in *Professional Engineers*.

## II. *Discussion*[6]

### A. *Validity of the Trial Court's Ruling*

The Governor contends the trial court erred when it ruled the furlough programs were illegal. We turn first to the statutes cited by the trial court to support its ruling.

The trial court ruled the furlough programs were invalid because they violated section 19851. Our Supreme Court addressed this same issue in *Professional Engineers*. The court noted the legislative history of section 19851 demonstrated that the purpose of that statute was "to establish the number of hours an employee must work before potentially becoming eligible for overtime compensation." (*Professional Engineers, supra,* 50 Cal.4th at p. 1028.) According to the court, the provisions of that statute, when viewed in context, "simply were not intended to apply to the type of unpaid furlough at issue in the present case." (*Id.* at p. 1029.) Based on *Professional Engineers*, we conclude the trial court erred when it ruled the furlough programs at issue here were invalid because they violated section 19851.

The trial court also ruled the furlough programs were invalid because they violated section 16310. Our Supreme Court did not address that statute in

---

[6] While this case was being briefed, the parties filed three requests asking us to take judicial notice of various items of legislative history. We deferred ruling on those requests until deciding the merits of the appeal. Having now considered the requests, we grant them.

*Professional Engineers*; however, we agree with the Governor that the trial court's ruling on this point cannot be upheld.

█ Section 16310, subdivision (a) provides that when the State's General Fund "is or will be exhausted," the "Governor may order the Controller to direct the transfer of all or any part of the moneys not needed in other funds or accounts to the General Fund." The statute states that "[n]o interest shall be charged or paid on any transfer authorized by this section . . ." and that the transferred funds "shall be returned" as soon as possible. However, the statute places a significant restriction on the Governor's authority to order a transfer: "This section does not authorize any transfer that will interfere with the object for which a special fund was created . . . ."

The trial court ruled the furlough programs at issue here violated section 16310 because the Governor had attempted to justify the furlough of special fund employees (an act that does not save the General Fund any money), by noting those furloughs increased the amount of money in those special fund agencies which then could be borrowed internally. Citing evidence that agencies such as the State Department of Social Services, which conducts Social Security disability determinations on behalf of the federal government, had been operating less efficiently since the furloughs were instituted, the court ruled that "[p]etitioner's evidence demonstrates furloughing employees of agencies funded by special funds for the purpose of freeing up additional borrowable funds has resulted in an interference with the objectives of those agencies. As such, the Executive Orders and their implementation violate . . . section 16310(a) and are an abuse of discretion."

█ The proper interpretation of a statute presents a question of law that this court must review de novo on appeal (see *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]). Applying this standard, we conclude the trial court interpreted section 16310, subdivision (a) incorrectly. The court ruled that "furloughing" state employees was illegal because it interfered with the objectives of the special fund agencies, while the statute prohibits "any transfer" that interferes with the object for which a special fund was created. The trial court's analysis assumed that furloughing state employees necessarily resulted in the transfer of funds, and implicitly that it was the transfer of funds that caused a less efficiently functioning agency. But there is no evidence to support the conclusion that upon furloughing petitioner's represented employees a transfer of funds took place. The trial court referred to evidence that furloughs caused agencies to be closed three days a month and concluded that this fact alone was prima facie evidence of interference. But the plain language of section 16310, subdivision (a) states that the transfer of funds may not interfere. We conclude the trial court erred when it ruled that a statute that

prohibits one act, the transfer of funds, was ipso facto violated by a different act, the furloughing of state employees.

UAPD contends this conclusion "elevates form over substance to the extreme." According to UAPD, the Governor "cannot argue the rationale for the furloughs at Special Fund agencies was to create borrowable mon[ies] and at the same time argue that [section] 16310's anti-borrowing provisions are not implicated . . . by the furloughs." We are unpersuaded. It *might* be true that furloughing state employees at special fund agencies in order to create borrowable resources resulted in borrowing that interfered with the objectives of the agencies from which the money was borrowed. On the other hand, it might not be true. We have no way of knowing because UAPD presented no evidence on that point. However, absent *evidence* that this occurred we have no grounds on which to conclude the furloughs violated section 16310. Our conclusion on this point does not elevate form over substance. Rather, we do no more and no less than apply the plain language of section 16310 as it is written. (Cf. *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 964 [103 Cal.Rptr.2d 672, 16 P.3d 94].) We conclude the trial court erred when it ruled the Governor's furlough programs violated section 16310.[7]

### B. *Issues That Arise as the Result of Professional Engineers*

UAPD claims that our Supreme Court's ruling in *Professional Engineers* did not resolve all of the issues that are presented in this case. It argues that aspects of the court's ruling can and should be upheld. We turn to those arguments.

### 1. *Whether Federally Funded Employees Can Be Furloughed*

As we have noted, in *Professional Engineers* our Supreme Court ruled that on December 19, 2008, the Governor lacked the authority to impose unilaterally a mandatory unpaid furlough on represented state employees. (*Professional Engineers, supra,* 50 Cal.4th at p. 1041.) However, the court also ruled that the Legislature's 2009 enactment of the revisions to the 2008

---

[7] UAPD raised an additional issue in its original brief: that furloughing "special fund" and "federally-funded" employees "wastes taxpayer dollars and is an abuse of discretion." UAPD has not advanced that argument in its supplemental brief and it is unpersuasive in any event. The Legislature validated the furlough program when it approved the 2009 revisions to the Budget Act of 2008 (2008 Budget Act). (*Professional Engineers, supra,* 50 Cal.4th at pp. 1000–1001.) It is not our function to question that decision. "The judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function." (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53 [51 Cal.Rptr.2d 837, 913 P.2d 1046].)

Budget Act operated to ratify the two-day-a-month furlough program that was then in effect. (50 Cal.4th at p. 1000.) UAPD now argues that the "Legislature . . . could not have intended for its authorization to include . . . furloughing federally-funded employees" because furloughing such employees saves the state nothing and actually loses money.[8] We disagree.

In *Professional Engineers*, our high court ruled the Legislature's 2009 revisions to the 2008 Budget Act operated to validate the "then existing furlough program" (*Professional Engineers, supra*, 50 Cal.4th at p. 1047), and the "then existing furlough program" was the program that had been implemented by the Governor on December 19, 2008, and that called for a mandatory furlough of represented state employees " '*regardless of funding source.*' " (*Id.* at p. 1003, italics added.) It is not our place to question our Supreme Court's rulings on this point. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Based on *Professional Engineers*, we conclude the Governor could validly furlough state employees who are paid by the federal government.

2. *Validity of the Third Furlough Day*

A. *Background*

In *Professional Engineers*, our Supreme Court ruled that the two-day-a-month mandatory furlough program that had been put in place by the Governor on December 19, 2008, was valid. The court declined to address the validity of the third furlough day that had been implemented by the Governor on July 1, 2009. (*Professional Engineers, supra*, 50 Cal.4th at p. 1007.) UAPD now argues that under the reasoning of *Professional Engineers*, the third furlough day was unauthorized.

As we have stated, in *Professional Engineers*, our Supreme Court ruled the Governor lacked the power on December 19, 2008, unilaterally to furlough represented state employees. The court then turned to whether the Governor's action could be upheld on some other ground. The court found that ground in the 2009 revisions to the 2008 Budget Act. Specifically, as is relevant here, section 3.90, subdivision (a) of those revisions stated, " 'Notwithstanding any

---

[8] UAPD raises one additional argument in a footnote. It contends that language contained in Senate Bill No. 8X 29 (2009–2010 8th Ex. Sess.), a bill that was passed by the Legislature in March 2010, but was vetoed by the Governor, supports the conclusion that the Legislature did not intend that federally funded state employees be furloughed. Other courts have noted that it is difficult to rely on vetoed legislation when determining Legislative intent. (*Snyder v. Michael's Stores, Inc.* (1997) 16 Cal.4th 991, 1003, fn. 4 [68 Cal.Rptr.2d 476, 945 P.2d 781]; *California Labor Federation v. Industrial Welfare Com.* (1998) 63 Cal.App.4th 982, 994–995 [74 Cal.Rptr.2d 397].) We place little reliance on the legislative material UAPD has identified.

other provision of this act, each item of appropriation in this act . . . shall be reduced, as appropriate, to reflect a reduction in employee compensation achieved through the collective bargaining process for represented employees or through *existing administration authority* and a proportionate reduction for nonrepresented employees (utilizing existing authority of the administration to adjust compensation for nonrepresented employees) in the total amounts of $385,762,000 from General Fund items and $285,196,000 from items relating to the other funds.' " (*Professional Engineers, supra,* 50 Cal.4th at p. 1044, italics added.)

The *Professional Engineers* court focused on the phrase we have italicized and asked whether the Legislature, by using that language, intended to ratify the furlough program that was then in effect. The court answered that question in the affirmative:

"For a number of reasons, we conclude that the term 'existing administration authority,' as employed in the February 20, 2009, budget legislation, most reasonably is understood as embodying a legislative decision to permit the mandated reductions in employee compensation to be achieved through the then existing furlough plan.

"First, the legislative history of the provision in question clearly and explicitly establishes that the reductions in appropriations for employee compensation that were included in the bill *reflected the two-day-a-month furloughs.* Both the Senate and the Assembly floor analyses of Senate Bill 3X 2—material that was available to the legislators at the time they were considering the budget legislation—describe in similar language the various changes that the bill would make to the 2008 Budget Act, and indicate that the source of the analyses was the author of the bill, Senator Ducheny, the chair of the Senate Budget Committee. In describing the provision in the bill relating to state employee compensation, the Senate bill analysis states: 'Control Section 3.90 that reflects reductions across all budget areas to reduce employee compensation costs *related to furloughs,* the elimination of two state holidays, and minor changes to overtime calculations.' (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill [No.] 3X 2 (2009–2010 3d Ex. Sess.) as amended Feb. 14, 2009, p. 4, par. 22, italics added.) The comparable passage in the Assembly bill analysis states: 'Reflects reductions across all budget areas to reduce employee compensation costs *related to* furlough[s], the elimination of two state holidays, and minor changes to overtime calculations.' (Assem. Com. on Budget, Analysis of Sen. Bill [No.] 3X 2 (2009–2010 3d Ex. Sess.) as amended Feb. 14, 2009, p. 3, 2d par. 12, italics added.) This history makes it abundantly clear the Legislature contemplated that the reduction in appropriations for employee compensation set forth in section 3.90 could be achieved through the furlough plan that was then in existence.

"Second, aside from the furlough plan, the only other available 'existing administration authority' through which the state could have achieved the very substantial reduction in the appropriations for employee compensation mandated by the February 2009 budget legislation was the authority provided by section 19997, permitting a state appointing authority to 'lay off' state employees '[w]henever it is necessary because of *lack of . . . funds*, or whenever it is advisable in the interests of economy, to reduce the staff of any state agency . . . .' In our view it is not reasonable to suggest that the Legislature intended *to compel* the state, in the absence of a mutually agreed-upon collective bargaining resolution, to resort to *layoffs* of a significant percentage of state employees rather than to permit the state to utilize the furlough plan that was then already in use, particularly when the legislative history makes no reference to such layoffs.

"Third, although at the time the revised budget act was adopted on February 20, 2009, the trial court's judgment upholding the validity of the furlough program already had been appealed and the Legislature could not have known how the appeal ultimately would be resolved, it is reasonable to assume that body recognized that the reduction in employee compensation mandated by the revised 2008 Budget Act would have to be implemented prior to a final resolution of the appeal. We conclude that, in view of the exigent circumstances facing the Legislature, it intended to permit the then existing furlough program to be used as an alternative to other means that might be agreed upon through the collective bargaining process, without regard to whether the appellate courts ultimately determined that the Governor or the DPA possessed the authority to impose an unpaid furlough program unilaterally.

"Accordingly, we conclude that the phrase 'existing administration authority'—as used in section 36 of Senate Bill 3X 2—was intended to encompass the then existing furlough program. By enacting this provision, the Legislature, *through the exercise of its own legislative prerogative*, authorized the substantial reduction in the appropriations for employee compensation, mandated in the revised budget legislation, to be achieved through the two-day-a-month furlough plan." (*Professional Engineers, supra*, 50 Cal.4th at pp. 1046–1048, original italics.)

B. *Application of the Analysis in* Professional Engineers

The third furlough day that is at issue here was ordered by the Governor on July 1, 2009. On July 24, 2009, the Legislature passed, and on July 28, 2009, the Governor signed, Assembly Bill No. 4X 1 (2009–2010 4th Ex. Sess.) (Assembly Bill 4X 1), the revised 2009 Budget Act. That act mandated reductions in personnel expenditures using the exact same language as was

contained in the 2009 revisions to the 2008 Budget Act. Specifically, section 552 of the revised 2009 Budget Act states: "Notwithstanding any other provision of this act, each item of appropriation in this act . . . shall be reduced, as appropriate, to reflect a reduction in employee compensation achieved through the collective bargaining process for represented employees or through *existing administration authority* and a proportionate reduction for nonrepresented employees (utilizing existing authority of the administration to adjust compensation for nonrepresented employees) in the total amount of $1,477,917,000 from General Fund items and $973,058,000 from items relating to other funds." (Assem. Bill 4X 1, § 552, italics added.)

 No party to this appeal disputes that the reductions in employee compensation mandated by the revised 2009 Budget Act were premised on state employees taking three, not just two, furlough days per month. We conclude that when the Legislature used the same language in the revised 2009 Budget Act as it had used in the 2009 revisions to the 2008 Budget Act, it intended the same result. Employing the same analysis as did our Supreme Court in *Professional Engineers* we conclude the 2009 revisions acted to ratify the third furlough day that had been instituted by the Governor on July 1, 2009.

UAPD argues this conclusion is unwarranted because the legislative history of the 2009 Budget Act revision differs significantly from the legislative history of the 2008 Budget Act revision. Whereas the history of the revision to the 2008 Budget Act demonstrated that the Legislature intended to approve the two-day-a-month furlough program that was then in place, the history of the revisions to the 2009 Budget Act demonstrates the Legislature intended to reject the recently declared third furlough day. Specifically, when describing the provision of the bill relating to state employee compensation, the Senate Bill analysis of Assembly Bill 4X 1 states: "Rejects the Governor's proposal to reduce salaries by five percent—thereby maintaining a two-day furlough for all employees." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 4X 1, as amended July 23, 2009, p. 13, par. 4.)

We acknowledge this aspect of the legislative history is significant, and if we were writing on a clean slate, we might well hold it to be conclusive as to the Legislature's intent regarding the third furlough day. However, we are not writing on a clean slate. The legislative history of the 2009 revisions to the 2008 Budget Act was only the first of three factors that our Supreme Court cited in *Professional Engineers* when ascertaining the Legislature's intent. The second and third factors the court cited (it is unreasonable to conclude the Legislature intended to require massive layoffs instead of furloughs, and given the exigent circumstances facing the Legislature, it is reasonable to conclude it intended to permit the then existing furlough program to be used

as an alternative to other means that might be agreed upon through the collective bargaining process) remain fully applicable to our analysis of the validity of the third furlough day. Given that the language contained in the revised 2009 Budget Act is identical to that construed in *Professional Engineers* and given that two of the three factors that our Supreme Court cited in support of its ruling are equally applicable here, we think it is appropriate to reach the same result. We conclude the third furlough day was valid.[9]

### 3. *Was the February 6, 2009 Furlough Day Program Valid?*

The two-day-a-month furlough program put in place by the Governor on December 19, 2008, was to be effective from February 1, 2009, through June 30, 2010. The first furlough day under that program was to take place on February 6, 2009. (*Professional Engineers, supra,* 50 Cal.4th at p. 1003.)

Our Supreme Court ruled in *Professional Engineers* that on December 19, 2008, the Governor lacked the power unilaterally to furlough state employees. However, the court also ruled that when the Legislature passed the revised 2008 Budget Act on February 19, 2009, it ratified the two-day-a-month furlough program that was then in place. (*Professional Engineers, supra,* 50 Cal.4th at pp. 1005, 1044–1048.)

Noting this timeline, UAPD argues that the February 6, 2009 furlough was illegal because the Governor lacked the power to furlough on that date. UAPD maintains the February 19, 2009 revisions to the 2008 Budget Act

---

[9] Although the parties have not briefed the issue, we note that another argument could be made based on the language the Legislature used in the 2009 revisions to the 2008 Budget Act and the revised 2009 Budget Act that appears to limit the reach of authorized reductions in compensation. Specifically, in both instances, the Legislature stated, "Notwithstanding any other provision of this act, *each item of appropriation in this act . . .* shall be reduced, as appropriate, to reflect a reduction in employee compensation . . . ." (Assem. Bill 4X 1, § 552, italics added.) Based on the language we have italicized, one might argue that only employees who work for state agencies that are an "item of appropriation" in the budget are subject to furloughs. But the argument would not be persuasive here for the reason that the six state agencies named as defendants in this case and which are alleged to employ UAPD members all are items of appropriation in both the 2008 and 2009 budget acts. (For the Dept. of Consumer Affairs, see Stats. 2008, ch. 268, § 2.00, item 1111-002-0421; Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 1, § 2.00, item 1111-002-0702. For the Dept. of Rehabilitation, see Stats. 2008, ch. 268, § 2.00, item 5160-001-0001; Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 1, § 2.00, item 5160-001-0001. For the Dept. of Managed Health Care, see Stats. 2008, ch. 268, § 2.00, item 2400-001-0933; Stats. 2009, ch. 1, 3d Ex. Sess. 2009–2010, § 2.00, item 2400-001-0933. For the State Dept. of Health Care Services, see Stats. 2008, ch. 268, § 2.00, item 4260-001-0001; Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 1, § 2.00, item 4260-001-0001. For the Dept. of Public Health, see Stats. 2008, ch. 268, § 2.00, item 4265-001-0001; Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 1, § 2.00, item 4265-001-0001. For the State Dept. of Social Services, see Stats. 2008, ch. 268, § 2.00, item 5180-001-0001; Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 1, § 2.00, item 5180-001-0001.)

could not cure that illegality because " '[g]enerally statutes operate prospectively only.' " (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 475 [20 Cal.Rptr.3d 428, 99 P.3d 1015], quoting *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 840 [123 Cal.Rptr.2d 40, 50 P.3d 751].) We reject this argument for three reasons.

First, our Supreme Court ruled in *Professional Engineers*, that the Legislature's 2009 revisions to the 2008 Budget Act operated to validate the "then existing furlough program" (*Professional Engineers, supra*, 50 Cal.4th at p. 1047), and the "then existing furlough program" was the program that had been implemented by the Governor on December 19, 2008, and that called for a mandatory furlough of represented state employees from February 1, 2009, though June 30, 2010. It is not our role to disagree with our Supreme Court's rulings on this point. (*Auto Equity Sales, Inc. v. Superior Court, supra*, 57 Cal.2d at p. 455.)

■ Second, legislation is retroactive when it changes the legal consequences of past conduct by imposing new or different liabilities (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 937 [22 Cal.Rptr.3d 530, 102 P.3d 915]); and the 2009 revisions to the 2008 Budget Act did not change the legal consequences of past conduct or impose new or different liabilities. Precisely the opposite is true. Those revisions validated and made legal a furlough program that was already in place. We fail to see how retroactivity is implicated here.

Third, even if we were to assume retroactivity was an issue here, we would not reverse on this ground. Legislation may be applied retroactively if it contains express language requiring retroactivity *or* if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application. (*McClung v. Employment Development Dept., supra*, 34 Cal.4th at p. 475.) That latter situation is present here. As our Supreme Court explained in *Professional Engineers*, the legislative history of the 2009 revisions to the 2008 Budget Act clearly and plainly indicates the Legislature contemplated that the reduction in appropriations for employee compensation set forth in that act could be achieved through the furlough plan that was then in place. (*Professional Engineers, supra*, 50 Cal.4th at pp. 1046–1047.) The furlough plan then in place included the February 6, 2009 furlough day. In our view, this is a clear statement of Legislative intent.

■ UAPD contends it would be unconstitutional to conclude that the February 19, 2009 revisions to the 2008 Budget Act operated to validate the February 6, 2009 furlough day. However, the primary case UAPD cites to support this argument, *New York State Psychiatric Assn. v. New York State Dept. of Health* (N.Y.App.Div. 2010) 71 A.D.3d 852 [898 N.Y.S.2d 153]

(*New York State Psychiatric Assn.*), is distinguishable. There, the New York State Legislature enacted a bill to add licensed psychiatrists to the list of providers who were qualified to receive reimbursement of Medicare coinsurance amounts. (*Id.*, 898 N.Y.S.2d at p. 155.) In a later budget bill, the Legislature removed licensed psychiatrists from the list of those who were entitled to receive reimbursement and applied the bill retroactively to services already rendered. The *New York State Psychiatric Assn.* court ruled the retroactive portion of the bill was illegal because it violated the vested right of the plaintiffs to reimbursement. (*Id.* at pp. 155–156.) Here, the Legislature did not change the rules and violate vested rights when it enacted the 2009 revisions to the 2008 Budget Act. Rather, it maintained the status quo by ratifying and giving legal force to a furlough program that was already in place. We conclude *New York State Psychiatric Assn.* is distinguishable.

### III. *Disposition*

The judgment invalidating the furlough programs is reversed.

Simons, J., and Needham, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 27, 2011, S194255. Werdegar, J., did not participate therein.