Filed 12/21/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SEE'S CANDIES, INC., et al., | B312241 |
| Petitioners, | (Los Angeles County Super. Ct. No. 20STCV49673) |
| v. | |
| SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES, | OPINION AND ORDER DENYING PETITION FOR WRIT OF MANDATE |
| Respondent; | |
| MATILDE EK et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING; petition for writ of mandate. Daniel M. Crowley, Judge.  Petition is denied.

Munger, Tolles & Olson, Joseph D. Lee (Los Angeles) and Malcolm A. Heinicke (San Francisco) for Petitioners.

Gibson, Dunn & Crutcher, Bradley J. Hamburger (Los Angeles) and Lucas C. Townsend (Washington, D.C.) for Chamber of Commerce of the United States of America, California Chamber of Commerce, California Workers' Compensation Institute, Restaurant Law Center, California Restaurant Association, National Association of Manufacturers, National Retail Federation, and National Federation of Independent Business Small Business Legal Center as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Krissman & Silver, Joel Krissman and Donna Silver for Real Parties in Interest.

_____

See's Candies, Inc. and See's Candy Shops, Inc. (collectively, defendants) petition for a writ of mandate directing the trial court to vacate an order overruling their demurrer to a wrongful death action filed by real parties in interest Matilde Ek (Mrs. Ek), Karla Ek-Elhadidy, Lucila del Carmen Ek, and Maria Ek-Ewell (collectively, plaintiffs).  Plaintiffs are the wife and daughters of decedent Arturo Ek (Mr. Ek).

Plaintiffs allege that Mrs. Ek, defendants' employee, contracted COVID-19 at work because of defendants' failure to implement adequate safety measures.  They claim that Mr. Ek subsequently caught the disease from Mrs. Ek while she convalesced at home.  He died from the disease a month later.

2

Defendants filed a demurrer asserting that plaintiffs' claims are preempted by the exclusivity provisions of the Workers' Compensation Act (WCA; Lab. Code,[1] § 3200 et seq.). Specifically, defendants argued plaintiffs' claims are barred by the "derivative injury doctrine" (see *Snyder v. Michael's Stores, Inc.* (1997) 16 Cal.4th 991, 1000 (*Snyder*)), under which "the WCA's exclusivity provisions preempt not only those causes of action premised on a compensable workplace injury, but also those causes of action premised on injuries ' "collateral to or derivative of" ' such an injury." (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1051 (*King*).) Among other things, this doctrine preempts third party claims "based on the physical injury or disability of the spouse," such as loss of consortium or emotional distress. (*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 162–163.)

Defendants argued below, as they do in this writ proceeding, that under *Snyder*, a claim is derivative if it would not exist absent injury to the employee. Because plaintiffs allege Mr. Ek contracted COVID-19 from Mrs. Ek, who in turn contracted the disease at work, defendants contend Mr. Ek's death would not have occurred absent Mrs. Ek's workplace exposure, and thus was derivative of Mrs. Ek's work-related injury. Accordingly, defendants argue that plaintiffs' claims are subject to WCA exclusivity. The trial court rejected this argument and overruled the demurrer.

We agree with the trial court. Assuming arguendo that Mrs. Ek's workplace infection constitutes an injury for purposes of the WCA, we reject defendants' efforts to apply the derivative

---

[1] Unspecified statutory citations are to the Labor Code.

injury doctrine to any injury causally linked to an employee injury. Defendants' interpretation is inconsistent with the language of *Snyder*, which establishes that the fact an employee's injury is the biological cause of a nonemployee's injury does not thereby make the nonemployee's claim derivative of the employee's injury.

Further, *Snyder*'s discussion of prior case law applying the derivative injury doctrine does not support applying the doctrine based solely on causation. *Snyder* approved of cases applying the doctrine to claims by family members for losses stemming from an employee's disabling or lethal injury, such as wrongful death, loss of consortium, or emotional distress from witnessing a workplace accident. In contrast, the Supreme Court called into question a case applying the derivative injury doctrine outside these contexts based on causation alone.

Defendants' interpretation of the derivative injury doctrine would lead to anomalous results, shielding employers from civil liability in contexts the drafters of the WCA could not have intended. Although the breadth of the derivative injury doctrine presents serious policy considerations, *Snyder* recognizes that such policy considerations are within the province of the Legislature and should not be judicially addressed by expansion of the derivative injury doctrine.

Amici arguing in support of defendants describe the trial court's ruling as an "outlier," and contend other jurisdictions have dismissed complaints alleging similar facts and legal theories. Amici's hyperbole notwithstanding, the rulings they cite either were decided on bases other than workers' compensation exclusivity or do not articulate their reasoning sufficiently to be

4

persuasive. Analogous precedents from other jurisdictions support our holding.

Because the parties have framed this writ exclusively to address the applicability of the WCA, we have no occasion to decide whether defendants owed Mr. Ek a duty of care or whether plaintiffs can demonstrate that Mr. or Mrs. Ek contracted COVID-19 because of any negligence in defendants' workplace, as opposed to another source during the COVID-19 pandemic. The parties have not raised these issues, and we decline to address them sua sponte.

Accordingly, we deny the petition.

## PROCEDURAL BACKGROUND

Plaintiffs filed their complaint against defendants on December 30, 2020, alleging the following:

"Defendants operated a candy assembly and packing line and employed workers in the course and scope of said business, including [Mrs. Ek]. During said time there was a global, national, state and County of Los Angeles pandemic and epidemic, Sars-Cov-2 coronavirus, commonly referred to as Covid-19. Defendants were aware of the highly dangerous, contagious and transmissible nature of that virus, particularly where people are working and interacting in close proximity to each other. Further, Defendants' employees at the plant complained directly and through their union representative to Defendants about the close proximity of their work environment[,] requesting safety mitigation efforts due to fear of the virus. Defendants failed to operate and conduct their business as would and should be expected to protect their employees, including [Mrs. Ek], from the known high risk of this viral infection by failing to put known,

5

appropriate and necessary safety mitigation measures in place. Defendants knew and should have known that the workers' duties, locations within the plant, and physical distancing from one another, created a foreseeable and high risk of viral infection and transmission among the workers, including [Mrs. Ek]. Defendants knew and should have known that their failure to take appropriate and necessary safety mitigation measures would increase the known and foreseeable risk that their workers, like [Mrs. Ek], would become infected in the course and scope of their work for Defendants, and carry said viral infection home infecting one or more of their family members[.]"

The complaint continued: "On or about 3/1/20–3/19/20, [Mrs. Ek] was working without appropriate and necessary social distancing on the packing line, using restrooms and break-rooms at times inches [or] only a few feet from other workers, some of whom were coughing [and] sneezing, and became infected along with other co-workers with Covid-19. [Mrs. Ek], unable to work[,] then convalesced at her home where she resided with her husband, [Mr. Ek], and one of their daughters, Plaintiff Karla Ek-Elhadidy, who provided care for her. Within a few days, on or about 3/22/20 both [Mr. Ek], and daughter Karla Ek-Elhadidy, became sick with Covid-19. [Mr. Ek], after struggling with the illness, died as a proximate and legal cause therefrom, on 4/20/20."

Plaintiffs asserted causes of action for general negligence and premises liability. They sought "all recoverable damages for the wrongful death of [Mr. Ek], including loss of love, care, comfort and society." Mrs. Ek, as Mr. Ek's successor in interest, also sought "economic losses for medical and care costs for the

6

period of time [Mr. Ek] survived after being infected with Covid-19."

Defendants filed a demurrer contending that plaintiffs' claims were preempted by the WCA under the derivative injury doctrine. The doctrine applied, defendants argued, because plaintiffs could not state a claim against defendants for Mr. Ek's death without alleging an injury to an employee, namely Mrs. Ek's workplace infection with COVID-19. Plaintiffs filed an opposition.

Following a hearing, the trial court overruled the demurrer. The court found that any injury to Mrs. Ek was "irrelevant" to plaintiffs' claims because "that injury is not the injury upon which Plaintiffs sue." Rather, "[i]t was [Mr. Ek's] exposure to the COVID-19 brought home by Mrs. Ek that Plaintiffs claim caused Plaintiffs' injury."

The trial court continued: "Mrs. Ek did not have to become ill herself for Plaintiffs' injury to occur, and, so, contrary to Defendants' position, Plaintiffs do not allege that their injuries would not have existed in the absence of the workplace injury to Mrs. Ek. Accordingly, Plaintiffs' claimed injuries are not collateral to nor derivative of Mrs. Ek's becoming ill with COVID-19. Were Plaintiffs alleging that their injuries stemmed from Mrs. Ek's illness, say, because they lost income or missed out on Mrs. Ek's companionship while she was sick with the COVID-19 she contracted at work, a different outcome would result."

The trial court analogized the allegations in the complaint to those in *Kesner v. Superior Court* (2016) 1 Cal.5th 1132 (*Kesner*), a case holding that an employer could be held liable for injuries to an employee's family members caused by asbestos

fibers on the employee's clothing. (See *id.* at p. 1140.) The court also discussed *Snyder*, which held that the derivative injury doctrine did not apply to fetal injuries stemming from a mother's exposure to carbon monoxide in the workplace. (See *Snyder*, *supra*, 16 Cal.4th at p. 994.) The court characterized both *Kesner* and *Snyder* as cases in which plaintiffs "sustained their own independent injuries as a result of their being exposed to a toxin in a related employee's workspace."

Defendants petitioned for a writ of mandate ordering the trial court to vacate the overruling of the demurrer. We issued an order to show cause why a peremptory writ should not be granted. Plaintiffs filed a return, and defendants filed a reply.

## PROPRIETY OF WRIT REVIEW

An appellate court may review an order overruling a demurrer prior to final judgment through a writ of mandate. (*California Dept. of Tax & Fee Administration v. Superior Court* (2020) 48 Cal.App.5th 922, 929 (*California Dept. of Tax & Fee Administration*).) "However, writ review is appropriate only when (1) 'the remedy by appeal would be inadequate' [citation] or (2) the writ presents a 'significant issue of law' or an issue of 'widespread' or 'public interest' [citations]." (*Ibid.*) Employer liability for COVID-19 exposure is a significant issue of law that is also of public interest; indeed, another case with allegations similar to those of the instant case is pending before the Los Angeles Superior Court. (See *Gomez v. Logix Federal Credit Union, Inc.* (Super. Ct. Los Angeles County, Apr. 27, 2021, No. 21STCV15877.) On this basis we issued the order to show cause.

8

## STANDARD OF REVIEW

"In reviewing an order overruling a demurrer, we ask whether the operative complaint ' "states facts sufficient to constitute a cause of action" ' [citation] and, if it does, whether that complaint nevertheless ' "disclose[s] some defense or bar to recovery" [citation]' [citation].  In undertaking the inquiry, we accept as true all ' " ' "material facts properly pleaded" ' " '[2] and consider any materials properly subject to judicial notice. [Citation.]  We independently review a trial court's order overruling a demurrer [citation], including its analysis interpreting constitutional and statutory provisions [citation]." (*California Dept. of Tax & Fee Administration*, *supra*, 48 Cal.App.5th at p. 929.)

## DISCUSSION

### A.    The Workers' Compensation Act and Derivative Injury Doctrine

The WCA is " 'a comprehensive statutory scheme governing compensation given to California employees for injuries incurred in the course and scope of their employment.' [Citations.]  At the core of the WCA is what we have called the ' " 'compensation bargain.' " ' [Citation.]  Under this bargain, ' "the employer assumes liability for industrial personal injury or death without

---

[2] Notably, we accept as true for purposes of this writ proceeding that Mrs. Ek contracted COVID-19 at work due to defendants' negligence, and that Mr. Ek contracted the disease from Mrs. Ek.  Whether these allegations in fact are true is a matter for the trial court, and we express no opinion on these questions.

regard to fault in exchange for limitations on the amount of that liability." ' [Citation.] The employee, for his or her part, ' "is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." ' [Citation.]" (*King*, *supra*, 5 Cal.5th at pp. 1046–1047.)

"To give effect to the compensation bargain underlying the system, the WCA generally limits an employee's remedies against an employer for work-related injuries to those remedies provided by the statute itself." (*King*, *supra*, 5 Cal.5th at p. 1051.) Put another way, the WCA preempts "causes of action premised on a compensable workplace injury" (*ibid.*), which instead must be addressed within the workers' compensation system. This exclusivity is enshrined particularly in sections 3600 and 3602. (See *King*, at p. 1051.)

Under section 3600, subdivision (a), when the "conditions of compensation" are met, workers' compensation liability "shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death . . . ." This liability is "in lieu of any other liability whatsoever to any person," subject to exceptions not applicable here. (§ 3600, subd. (a).) Section 3602, subdivision (a) provides, "Where the conditions of compensation set forth in Section 3600 concur, the right to recover compensation is . . . the sole and exclusive remedy of the employee or his or her dependents against the employer," again subject to exceptions not relevant here.

10

As applicable to this case, the "conditions of compensation" include that "at the time of the injury, both the employer and the employee are subject to the compensation provisions of [the WCA]," "the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment," and "the injury is proximately caused by the employment, either with or without negligence." (§ 3600, subd. (a)(1)–(3).)

WCA exclusivity is not limited to claims brought by injured employees themselves. The workers' compensation system also is "the exclusive remedy for certain third party claims deemed collateral to or derivative of the employee's injury." (*Snyder*, *supra*, 16 Cal.4th at p. 997.) Courts have referred to this principle as the "derivative injury rule" or "derivative injury doctrine." (See, e.g., *id.* at p. 1000.)

The rule follows from the language of the WCA itself: "The employer's compensation obligation is 'in lieu of any other liability whatsoever *to any person*' (§ 3600, italics added), including, but not limited to, the employee's dependents (§ 3602) for work-related injuries to the employee. This statutory language conveys the legislative intent that 'the work-connected injury engender[ ] a single remedy against the employer, exclusively cognizable by the compensation agency.' [Citation.]" (*Snyder*, *supra*, 16 Cal.4th at pp. 996–997.)

Examples of claims courts have held barred under this doctrine include "civil actions against employers by nondependent parents of an employee for the employee's wrongful death [citation], by an employee's spouse for loss of the employee's services [citation] or consortium [citations], and for emotional distress suffered by a spouse in witnessing the

11

employee's injuries [citations]." (*Snyder*, *supra*, 16 Cal.4th. at p. 997.)

The derivative injury doctrine also bars causes of action based on "injuries that arose during the treatment of [an employee's] industrial injury and in the course of the workers' compensation claims process." (*King*, *supra*, 5 Cal.5th at pp. 1052–1053.) In *King*, for example, the doctrine preempted an employee's claim that he suffered injury when a workers' compensation utilization reviewer denied him a particular drug. (*Id.* at p. 1046.) Similarly, the doctrine preempts civil claims for contractual or economic damages arising from the workers' compensation claims process, for example, by employees contending their workers' compensation benefits were wrongfully delayed or discontinued, or by medical providers "seeking compensation for services rendered to an employee in connection with his or her workers' compensation claim." (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 815 (*Vacanti*).)[3]

Defendants contend that the derivative injury doctrine applies when an employee contracts a virus at work, subsequently infects a family member, and the family member dies as a result. Their argument relies primarily on two

_____

[3] In *Vacanti*, plaintiff medical providers alleged workers' compensation insurers intentionally delayed or denied payments in bad faith. (*Vacanti*, *supra*, 24 Cal.4th at p. 823.) The Supreme Court held these claims were collateral to or derivative of workplace injuries. (*Id.* at p. 815.) Although this barred some of plaintiffs' causes of action (*id.* at p. 823), it did not bar their antitrust, RICO, and conspiracy claims, which alleged acts by the defendants the court held were outside the risks encompassed by the compensation bargain. (*Id.* at pp. 825–828.)

sentences from *Snyder*. First, "[T]he derivative injury rule governs cases in which 'the third party cause of action [is] derivative of the employee injury in the purest sense: It simply would not have existed in the absence of injury to the employee.' [Citation.]" (*Snyder*, *supra*, 16 Cal.4th at p. 998.) Second, "[T]he rule applies when the plaintiff, in order to state a cause of action, *must* allege injury to another person—the employee." (*Ibid.*)

Defendants assert the instant case meets this test because Mr. Ek's illness would not have occurred but for Mrs. Ek contracting the virus at work and transmitting it to him. In other words, Mr. Ek's injury " 'would not have existed in the absence of injury' " to Mrs. Ek. (*Snyder*, *supra*, 16 Cal.4th at p. 998.) Further, in order to state a cause of action against defendants, plaintiffs "*must* allege injury to . . . the employee" (*ibid.*), because Mrs. Ek's alleged workplace infection is the only link between the harm to Mr. Ek and defendants' alleged negligence.

While these two sentences from *Snyder* in isolation provide fodder for defendants' interpretation, in the full context of the *Snyder* opinion defendants' contention is not persuasive. Accepting for purposes of this writ proceeding that Mrs. Ek's contraction of a virus, without more, constitutes a cognizable WCA injury, defendants' contention that any injury caused by an employee injury necessarily falls within the derivative injury doctrine is inconsistent with other language in *Snyder* as well its analysis of case law establishing the boundaries of the doctrine. Accepting defendants' position would also lead to anomalous results and extend the "compensation bargain" beyond its underlying rationale.

13

We next turn to a detailed discussion of *Snyder*.[4]

## B.   *Snyder*

*Snyder* involved a civil suit for damages brought by Mikayla Snyder, a minor, and her mother and father, Naomi and David Snyder, against Naomi's former employer, Michael's Stores, Inc. (Michael's), and others.[5]  (*Snyder, supra*, 16 Cal.4th at p. 995.)  The plaintiffs alleged that "Michael's negligently allowed a janitorial contractor to operate a propane-powered floor-buffing machine in the store without adequate ventilation, resulting in hazardous levels of carbon monoxide."  (*Ibid.*)  "[B]oth Naomi and Mikayla, who was then *in utero*, were exposed to toxic levels of carbon monoxide . . . ."  (*Ibid.*)  Naomi was "taken to the hospital with symptoms of nausea, headaches and respiratory distress," and "Mikayla suffered permanent damage to her brain and nervous system, causing her to be born with cerebral palsy and other disabling conditions."  (*Ibid.*)  Mikayla sought damages for her physical injuries, and her parents sought "economic damages for the increased medical, educational and other expenses they have incurred and will incur due to Mikayla's physical injuries."  (*Ibid.*)

---

[4]  *Kesner*, cited by the trial court, did not address workers' compensation exclusivity, but rather whether the defendant employers had a duty to protect the family members of their employees from exposure to asbestos fibers brought into the home on the employees' clothing and personal effects.  (See *Kesner, supra*, 1 Cal.5th at p. 1140.)  *Kesner* therefore is not instructive on the application of the derivative injury doctrine.

[5]  The *Snyder* opinion refers to the plaintiffs by their first names (see, e.g., *Snyder, supra*, 16 Cal.4th at pp. 994–995), and we shall do the same.

14

The trial court sustained Michael's demurrer, concluding that the WCA provided the exclusive remedy for the plaintiffs' claims. (*Snyder*, *supra*, 16 Cal.4th at p. 995.) The trial court relied on *Bell v. Macy's California* (1989) 212 Cal.App.3d 1442 (*Bell*), "which held fetal injuries are, as a matter of law, derivative of injury to the pregnant mother." (*Snyder*, at p. 994, citing *Bell*, at pp. 1453–1454.) The Court of Appeal reversed, "explicitly rejecting *Bell*'s rationale and holding." (*Snyder*, at p. 994.) The Supreme Court granted review to resolve the conflict between *Bell* and the Court of Appeal's decision in *Snyder*. (*Snyder*, at p. 995.)

*Bell* involved a pregnant worker who complained at her workplace of severe abdominal pain. A nurse provided by her employer "misdiagnosed the worker's condition as gas pains and delayed calling for an ambulance." The mother ultimately went to the hospital, where doctors discovered she had a ruptured uterus. The baby "suffered consequential injuries including brain damage." The *Bell* court accepted for purposes of the appeal that "the nurse's delay in calling an ambulance caused a significant portion of the fetal injuries." (*Snyder*, *supra*, 16 Cal.4th at p. 997, citing *Bell*, *supra*, 212 Cal.App.3d at pp. 1446–1447.)

The *Bell* majority "concluded the derivative injury rule barred the tort claims of the child (called Baby Freytes in the opinion) because the child's prenatal injury *'was a collateral consequence of the treatment of Bell* [the mother].' [Citation.] '[*B*]*ecause the injuries to Baby Freytes were the direct result of Macy's work-related negligence towards Bell, they derived from that treatment and are within the conditions of compensation of the workers' compensation law*.' [Citation.] More generally, the *Bell* majority reasoned that, even if the employee mother was

15

not herself injured, a 'central physical fact . . . compels application of the [derivative injury] doctrine:  that the fetus *in utero* is inseparable from its mother.  *Any injury to it can only occur as a result of some condition affecting its mother.  When, as in the case at bench, the condition arises in the course of employment, the derivative injury doctrine would apply*.' [Citation.]"  (*Snyder*, *supra*, 16 Cal.4th at pp. 997–998, quoting *Bell*, *supra*, 212 Cal.App.3d at p. 1453 & fn. 6.)

The Supreme Court in *Snyder* held that *Bell* misapplied the derivative injury doctrine.  (*Snyder*, *supra*, 16 Cal.4th at p. 997.) The court rejected the proposition that "workers' compensation exclusivity extends to all third party claims deriving from some 'condition affecting' the employee," or that "a nonemployee's injury [is] collateral to or derivative of an employee injury merely because they both resulted from the same negligent conduct by the employer."  (*Id.* at p. 998.)  "The employer's civil immunity is not for all liability resulting from negligence toward employees, but only for all liability, to any person, deriving from an employee's work-related *injuries*."  (*Ibid.*)

Quoting the dissent in *Bell*, *Snyder* stated, "[T]he derivative injury rule governs cases in which 'the third party cause of action [is] derivative of the employee injury in the purest sense:  It simply would not have existed in the absence of injury to the employee.' [Citation.]"  (*Snyder*, *supra*, 16 Cal.4th at p. 998.)  "[T]he rule applies when the plaintiff, in order to state a cause of action, *must* allege injury to another person—the employee."  (*Ibid.*)

The court explained that in prior cases applying the derivative injury doctrine to third party claims, the actions were "necessarily dependent on the existence of an employee injury."

16

(*Snyder*, *supra*, 16 Cal.4th at p. 998.)  For example, parents could not "s[eek] their own damages for the work-related death of their minor son" because the claim "existed 'by reason of the injury accruing to the employee.' " (*Ibid.*, quoting *Treat v. Los Angeles Gas etc. Corp.* (1927) 82 Cal.App. 610, 613, 616 (*Treat*).)

WCA exclusivity also applies to "claims for loss of services or consortium by a nonemployee spouse" because such claims are " 'based on the physical injury or disability of the [employee] spouse.' " (*Snyder*, *supra*, 16 Cal.4th at pp. 998–999, quoting *Cole v. Fair Oaks Fire Protection Dist.*, *supra*, 43 Cal.3d at p. 163.)  "While the losses for which damages are sought in a consortium action may properly be characterized as 'separate and distinct' from the losses to the physically injured spouse [citation], the former are unquestionably dependent, legally as well as causally, on the latter.  One spouse cannot have a loss of consortium claim without a prior disabling injury to the other spouse." (*Snyder*, at p. 999.)  "Similarly, a claim for negligent or intentional infliction of emotional distress, based on the plaintiff's having witnessed the physical injury of a close relative [at the relative's workplace], is logically dependent on the prior physical injury," and thus "barred as 'deriv[ing] from injuries sustained by an employee in the course of his employment.' " (*Ibid.*, quoting *Williams v. Schwartz* (1976) 61 Cal.App.3d 628, 634.)

Though it wrote approvingly of the cases applying the derivative injury doctrine to claims for an employee's wrongful death, loss of consortium by an employee's spouse, and the emotional distress of a relative who witnessed an employee's workplace injury, the Supreme Court called into question the holding of *Salin v. Pacific Gas & Electric Co.* (1982) 136 Cal.App.3d 185 (*Salin*), which "appl[ied] the derivative injury

17

rule to an action by an employee for wrongful deaths of the employee's children, where the employee alleged he killed his children as a result of insanity caused by working conditions." (*Snyder*, *supra*, 16 Cal.4th at p. 999, fn. 2.)

The court stated, "While we have no occasion here to rule on the correctness of the decision in *Salin*, we observe that sections 3600 through 3602 do not directly support the *Salin* court's extension of the derivative injury rule to third party injuries allegedly caused by an injured employee's postinjury acts." (*Snyder*, *supra*, 16 Cal.4th at p. 999, fn. 2.)

Turning back to *Bell*, the *Snyder* court observed the proper question "was not whether Baby Freytes's injuries resulted from the employer's negligent treatment of Bell or from 'some condition affecting' Bell [citation], but, rather, whether Baby Freytes's claim was legally dependent on Bell's work-related *injuries*." (*Snyder*, *supra*, 16 Cal.4th at p. 999.) The court found "evidence of such dependence" lacking in the *Bell* opinion. (*Ibid*.) "Although the fetal injuries resulted in part from the mother's ruptured uterus, the appellate court and the parties all assumed that 'Bell's ruptured uterus was unrelated to her employment save only that it occurred during working hours and on Macy's premises.' [Citation.] As to the nurse's delay in summoning an ambulance, the majority's recitation of the evidence indicates simply that the delay 'caused significant injury to Baby Freytes' [citation]; nothing in the majority opinion suggests Baby Freytes's claim depended conceptually on injuries the delay caused to Bell." (*Ibid*.)

The *Snyder* court disagreed with *Bell's* conclusion that the inseparability of a fetus from the mother "dictat[es] application of the derivative injury rule to all fetal injuries. Biologically, fetal

18

and maternal injury have no necessary relationship. The processes of fetal growth and development are radically different from the normal physiological processes of a mature human. Whether a toxin or other agent will cause congenital defects in the developing embryo or fetus depends heavily not on whether the mother is herself injured, but on the exact stage of the embryo or fetus's development at the time of exposure, as well as on the degree to which maternal exposure results in embryonic or fetal exposure. [Citation.] Even when the mother *is* injured, moreover, the derivative injury rule does not apply unless the child's claim can be considered merely collateral to the mother's work-related injury, a conclusion that rests on the legal or logical basis of the claim rather than on the biological cause of the fetal injury." (*Snyder*, *supra*, 16 Cal.4th at p. 1000.)

Applying these principles to the case before it, the *Snyder* court concluded the plaintiffs' claims were not barred by the derivative injury doctrine. "Plaintiffs alleged simply that both Naomi and Mikayla were exposed to toxic levels of carbon monoxide, injuring both. Mikayla sought recompense for her own injuries. Since Mikayla was not herself breathing at the time of the accident, that her exposure to carbon monoxide occurred through Naomi's inhalation of the fumes and the toxic substance conveyed to her through the medium of her mother's body can be conceded. As we have emphasized above, however, the derivative injury doctrine does not bar civil actions by all children who were harmed *in utero* through some event or condition affecting their mothers; it bars only attempts by the child to recover civilly for the mother's own injuries or for the child's legally dependent losses. Mikayla does not claim any damages for injury to Naomi. Nor does the complaint demonstrate Mikayla's own recovery is

legally dependent on injuries suffered by Naomi." (*Snyder*, *supra*, 16 Cal.4th at p. 1000.)  The court summarized cases from other jurisdictions similarly holding that fetal injuries were not subject to workers' compensation preemption.  (*Id.* at pp. 1001– 1002.)[6]

Michael's, the defendant in *Snyder*, argued "permitting children to pursue civil actions for prenatal injuries suffered in their parents' workplaces exposes employers to 'liability for injuries allegedly arising out of commonplace industrial accidents and thus defeats the "compensation bargain," ' " a concern also raised by the *Bell* court.  (*Snyder*, *supra*, 16 Cal.4th at p. 1004.)  The Supreme Court recognized this concern "may be substantial," but was "more properly addressed to the Legislature than to this court."  (*Ibid.*)

The court emphasized that the " 'compensation bargain' . . . is between businesses and their *employees* and generally does not include third party injuries."  (*Snyder*, *supra*, 16 Cal.4th at p. 1004.)  "The employee's 'concession' of a common law tort action under sections 3600 to 3602 extends, as we have seen, to family members' collateral losses deriving from the employee's injury.  Neither the statutory language nor the case law, however, remotely suggests that third parties who, because of a business's negligence, suffer injuries—logically and legally independent of any employee's injuries—have conceded their common law rights of action as part of the societal 'compensation bargain.' " (*Snyder*, at pp. 1004–1005.)

---

[6] The court rejected arguments that the Legislature had impliedly endorsed the holding of *Bell* or that the fetus herself could be considered an employee of Michael's.  (*Snyder*, *supra*, 16 Cal.4th at pp. 1002–1003.)

The court noted the difficult policy choices it would have to make if it "formulat[ed] a rule of civil immunity for fetal injuries." (*Snyder*, *supra*, 16 Cal.4th at p. 1005.) "[T]he current workers' compensation system provides little if any compensation to parents for birth defects or other harms their child suffers as a result of injury in the mother's workplace," and "provides none to the child." (*Id.* at pp. 1005–1006.) The court asked whether a rule of civil immunity for fetal injuries would have to be "coupled with a provision" allowing payments to parents and children not currently permitted. (*Id.* at p. 1005.) "These are questions that only the political branches of government can answer." (*Id.* at p. 1006.)

## C.    Analysis

### 1.    Third-party injuries are not subject to the derivative injury doctrine merely because they are caused by an employee injury

Defendants' interpretation of *Snyder* views a "derivative" injury for purposes of the derivative injury doctrine as any injury causally linked to an employee's injury. That is, if a nonemployee's injury would not have occurred but for an employee's compensable workplace injury, any civil claim by the nonemployee would be preempted by WCA exclusivity. This is because the nonemployee's injury " 'would not have existed' " but for the employee's injury. (*Snyder*, *supra*, 16 Cal.4th at p. 998.)

Defendants contend the *Snyder* court declined to apply the derivative injury rule to the fetal injuries in that case because, defendants argue, the Supreme Court concluded the mother's injuries were *not* the cause of the fetal injuries. Instead, the fetus suffered injury from her own independent exposure to the

21

carbon monoxide.  Specifically, defendants state, "The Court in *Snyder* went into considerable scientific detail to make clear that Mikayla's injury did not depend upon any antecedent injury to her mother Naomi."  They note the passage from *Snyder* stating that "fetal and maternal injury have no necessary relationship" and "[w]hether a toxin or other agent will cause congenital defects in the developing embryo or fetus depends heavily not on whether the mother is herself injured, but on the exact stage of the embryo or fetus's development at the time of exposure, as well as on the degree to which maternal exposure results in embryonic or fetal exposure."  (*Snyder*, *supra*, 16 Cal.4th at p. 1000.)  Defendants assert that whether the mother was injured was "not relevant to the Court's analysis" because "the ruling makes clear that the fetus sustained her injury herself directly in the workplace."

Defendants contrast the case before us from *Snyder* by asserting plaintiffs' claims here depend on the allegation that Mrs. Ek contracted a disease, which defendants contend constitutes an "injury" under the WCA.  They cite section 3208, stating that for workers' compensation purposes, " '[i]njury' includes any injury or disease arising out of the employment . . . ."  Thus, defendants argue, what distinguishes the instant case from *Snyder* is that the fetal injury in *Snyder* happened independent of any injury to the mother, whereas Mr. Ek would not have died but for the injury to Mrs. Ek, that is, her contracting COVID-19.

We question defendants' premise that Mr. Ek's injury necessarily was caused by an injury to Mrs. Ek, whereas the fetal injuries in *Snyder* were not caused by any injury to the mother. It is well known that people may transmit viruses, including the

virus that causes COVID-19, before they themselves have developed symptoms.  (See, e.g., Centers for Disease Control and Prevention, *Ending Isolation and Precautions for People with COVID-19:  Interim Guidance*, at <https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html> (as of Dec. 13, 2021), archived at https://perma.cc/T7SX-RWXB [noting that persons afflicted with "asymptomatic" or "pre-symptomatic" COVID-19 can transmit the virus to others].)  Thus, persons need not themselves suffer adverse health impacts in order to transmit a virus.  Arguably, then, viral transmission does not depend upon, and therefore under defendants' analytic model, is not caused by, any injury to the transmitting party.  The transmitting party may indeed suffer ill effects, as Mrs. Ek allegedly did, but those effects are not themselves the but-for cause of the viral transmission to another.

In our view, moreover, there is little difference conceptually between a mother breathing in a poisonous gas and conveying it to her unborn child, and a wife breathing in viral particles that she then conveys to family members.  In both cases, the employee is merely the conduit of a toxin or pathogen; whether the employee herself was harmed by the toxin or pathogen is not relevant to the claims of the injured family members.

Assuming arguendo that Mrs. Ek's infection constitutes an injury for purposes of the WCA, and that injury in turn caused Mr. Ek's injury, we nonetheless reject defendants' reading of *Snyder* to extend the derivative injury doctrine to any injury for which an employee injury was a but-for cause.

Throughout the *Snyder* opinion, the Supreme Court referred to collateral or derivative claims as those that are

23

"legally" or "logically" dependent on an employee's injuries. (See, e.g., *Snyder*, *supra*, 16 Cal.4th at p. 999 [emotional distress claim based on witnessing injury to close relative "is logically dependent on the prior physical injury"]; *ibid.* [the question the *Bell* court "should have asked" was "whether Baby Freytes's claim was legally dependent" on mother's injuries]; *id.* at p. 1000 [derivative injury doctrine "bars . . . attempts by the child to recover civilly for the mother's own injuries or for the child's legally dependent losses"]; *id.* at p. 1005 [" 'compensation bargain' " does not encompass nonemployee injuries "logically and legally independent of any employee's injuries"]; *ibid.* [WCA preemption "does not include logically independent claims by family members or other third parties"].)

The *Snyder* court made clear, however, that "logical" or "legal" dependence is not equivalent to *causal* dependence. Following its explanation of how both the *Bell* and *Snyder* fetuses could be injured independently of any workplace injury sustained by their mothers, the court stated, "Even when the mother *is* injured, moreover, the derivative injury rule does not apply unless the child's claim can be considered merely collateral to the mother's work-related injury, a conclusion that rests on the legal or logical basis of the claim *rather than on the biological cause of the fetal injury*." (*Snyder*, *supra*, 16 Cal.4th at pp. 999–1000, second italics added.)  In other words, the fact that a mother's injury is the "biological cause" of a fetal injury does not by itself make the mother's injury the "legal or logical basis of the [fetus's] claim" for purposes of the derivative injury rule.  (*Ibid.*)

We read *Snyder*'s extensive discussion of the independent nature of fetal injuries as refuting the *Bell* majority's assertion that the physical inseparability of the mother and fetus renders a

24

fetal injury necessarily collateral to the mother's injury. The Supreme Court did not intend thereby to invite courts to scrutinize the particular biological causes of third-party injuries to determine the applicability of the derivative injury doctrine.

Our conclusion is supported by *Snyder*'s analysis of prior case law applying the derivative injury doctrine, which illustrates that derivative claims require more than a causal link to an antecedent injury. The court favorably invoked cases involving parents seeking "their own damages for the work-related death of their minor son," loss of an injured employee's consortium, and emotional distress from witnessing the workplace death of a spouse. (See *Snyder*, *supra*, 16 Cal.4th at pp. 998–999.) As we explain in greater detail below, these causes of action recognize that when a person suffers a disabling or lethal injury, the harms from that injury necessarily extend beyond the injured person to those who love and/or depend on that person.

What unites these types of claims is not merely that they are causally linked to an injury occurring to another person, but also that they are based on losses arising simultaneously from that injury—the directly injured party is disabled or killed, which in turn deprives close relatives of the injured party's support and companionship. In other words, when a tortious event occurs, multiple parties may immediately be affected, and the law entitles the close relatives of the directly injured party to recover damages on top of what the injured party may recover. It is this aspect of wrongful death, loss of consortium, and bystander emotional distress claims that makes them "derivative" of the directly injured party's claim.

Accordingly, it is legally impossible to state a cause of action for such claims without alleging a disabling or lethal

25

injury to another person.  This is reflected in the elements of the causes of action themselves.  Code of Civil Procedure section 376, the subject of the *Treat* case, provided at the time that a father or, in his absence, a mother, "may maintain an action for the injury or death of a minor child . . . caused by the wrongful act or neglect of another."  (Code Civ. Proc., former § 376 (Code Am. 1873–1874, ch. 383, p. 294, § 39); see *Treat*, *supra*, 82 Cal.App. at p. 613.)  A claim for loss of consortium requires " 'a tortious injury to the plaintiff's spouse . . . .' " (*LeFiell Manufacturing Co. v. Superior Court* (2012) 55 Cal.4th 275, 284.)  A witness to an "injury-producing" event may recover for negligent infliction of emotional distress if the witness "is closely related to the injury victim." (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 647 (*Thing*).)

Similarly, the damages recoverable for these causes of action all refer back to the disability or death suffered by the directly injured party.  Wrongful death actions allow recovery for, inter alia, " 'the loss of *the decedent's* financial support, services, training and advice' " and " 'the pecuniary value of *the decedent's* society and companionship.' [Citation.] " (*Fernandez v. Jimenez* (2019) 40 Cal.App.5th 482, 489, italics added.)  Loss of consortium involves harms to " ' "the noneconomic aspects of the *marriage relation*, including conjugal society, comfort, affection, and companionship," ' " as well as "sexual relations, moral support, and household services." (*Mealy v. B-Mobile, Inc.* (2011) 195 Cal.App.4th 1218, 1223, italics added.)  The damages for emotional distress recoverable in a bystander claim, of course, reflect the trauma of witnessing a tortious injury to a loved one. (See *Thing*, *supra*, 48 Cal.3d at p. 667.)

In contrast to these examples, the *Snyder* court took issue with the holding of *Salin*, a case extending the derivative injury

26

doctrine to a nonemployee's injury based on causation alone. In that case, the plaintiff alleged he suffered a psychotic episode caused by the negligence or wrongful acts of his employer, and killed his daughters as a result. (See *Salin*, *supra*, 136 Cal.App.3d at p. 190.) He sued for the wrongful death of his daughters. (*Id.* at p. 187.) The Court of Appeal affirmed judgment on the pleadings against the father because "the circumstances of plaintiff's employment was, at least, one of the '*proximate causes*' of the injury and damages suffered by him as a result of the wrongful death of his daughters," and therefore his " 'exclusive remedy' " was in the workers' compensation system. (*Id.* at p. 191.)

As we have said, the Supreme Court in *Snyder* stated, "[S]ections 3600 through 3602 do not directly support the *Salin* court's extension of the derivative injury rule to third party injuries allegedly caused by an injured employee's postinjury acts." (*Snyder*, *supra*, 16 Cal.4th at p. 999, fn. 2.) This language questioning *Salin*'s holding is inconsistent with defendants' position in the instant case. If, as defendants posit, the *Snyder* court intended to apply the derivative injury doctrine to any injury allegedly caused by an employee injury, *Salin* clearly would meet that test. Yet the *Snyder* court did not embrace *Salin*, but instead called its validity into doubt.

Further illustrating the *Snyder* court's rejection of causation as the sole requirement for application of the derivative injury doctrine is *Snyder*'s favorable discussion of a Louisiana fetal injury case, *Cushing v. Time Saver Stores, Inc.* (La.Ct.App. 1989) 552 So.2d 730 (*Cushing*). (See *Snyder*, *supra*, 16 Cal.4th at p. 1001.) *Cushing* involved "a child's suit for *in utero* brain injuries, allegedly caused by his mother's accidental workplace

27

fall." (*Snyder*, at p. 1001.) The Supreme Court in *Snyder* summarized *Cushing* thusly: "While prior Louisiana decisions had barred civil actions for third party derivative injuries, in all those cases the claimant's injury 'hinged upon the injuries of the employee. Because Dad or Mom suffered an injury, the family suffered a loss based on that injury.' [Citation.] The collateral loss might be economic, as in a claim for loss of support, or intangible, as in a claim for loss of consortium based on the employee's inability to continue participating in family life. [Citation.] In contrast, the fetal injuries at issue in *Cushing* were not logically derivative of the mother's injury: 'Whether Mom is there to continue bringing home a paycheck or to participate in the child's life has no relevance to this child's alleged brain damage.' [Citation.]" (*Snyder*, at pp. 1001–1002, quoting *Cushing*, at pp. 731–732.)

The Supreme Court's reliance on *Cushing* establishes that the mere fact that an employee's injury is the alleged cause of a nonemployee's injury does not make the nonemployee's injury "logically derivative" of the employee injury. (*Snyder*, *supra*, 16 Cal.4th at p. 1002.) Derivative injuries are the "economic" and "intangible" losses suffered by an employee's loved ones as a result of the employee's disability or death. (*Id.* at pp. 1001–1002.) This definition does not extend to separate physical injuries suffered by nonemployees, even when, as in *Cushing*, an employee's injury was part of the causal chain leading to those injuries.

To conclude otherwise would lead to anomalous outcomes. Consider if the carbon monoxide in *Snyder* had not merely passed through the mother to the child, but instead, damaged the mother's lungs, thus depriving the fetus of oxygen. Compared to

28

the facts of *Snyder*, the employer in this hypothetical would be no less negligent, and the fetus no less injured. Yet under defendants' logic, the derivative injury rule would apply to the fetus in our hypothetical because the mother's lung injury would be a but-for cause of the fetus's oxygen deprivation. Thus, in contrast to the fetus's remedies in *Snyder*, in our hypothetical the fetus's remedies would be limited to whatever was available through workers' compensation, if anything, rather than tort remedies. We cannot conceive why the particular manner in which the fetus was injured should determine whether the employer should be shielded from full tort liability by the workers' compensation system, nor is it apparent that the compensation bargain underlying the WCA compels such a rule.

We pause here to note that, although the case before us involves injuries allegedly suffered by family members of an employee, a construction of the derivative injury rule premised solely on causation would bar civil claims by *any* person injured as a result of the employee's injury, family member or not. Indeed, at oral argument, defendants' counsel conceded the wide reach of their proposed interpretation of the derivative injury doctrine.

To take an extreme example, imagine that a researcher in a laboratory studying dangerous pathogens inadvertently becomes infected due to the employer's lax safety protocols. That researcher then boards a bus home and infects all the passengers with a lethal virus. Under defendants' interpretation of *Snyder*, the passengers, whose illnesses " 'would not have existed in the absence of injury to the employee' " (*Snyder*, *supra*, 16 Cal.4th at

29

p. 998), would be barred from asserting civil claims seeking tort remedies against the laboratory.[7]

In *Snyder'*s own words, "The 'compensation bargain' . . . is between businesses and their *employees* and generally does not include third party injuries." (*Snyder, supra*, 16 Cal.4th at p. 1004.) "The employee's 'concession' of a common law tort action under sections 3600 to 3602 extends, as we have seen, to family members' collateral losses deriving from the employee's injury. Neither the statutory language nor the case law, however, remotely suggests that third parties who, because of a business's negligence, suffer injuries—logically and legally independent of any employee's injuries—have conceded their common law rights of action as part of the societal 'compensation bargain.' " (*Snyder*, at pp. 1004–1005.)

## 2. The derivative injury doctrine does not apply under the facts of this case

It is readily apparent that the derivative injury doctrine does not apply to the facts of the case before this court. Plaintiffs do not seek damages for losses arising from a disabling or lethal injury to Mrs. Ek, such as loss of her support or companionship, or emotional trauma caused by observing Mrs. Ek's suffering. Nor do they sue for "injuries that arose during the treatment of [an employee's] industrial injury" or "in the course of the workers' compensation claims process." (*King, supra*, 5 Cal.5th at pp. 1052–1053.) Instead, they sue for damages arising from Mr. Ek's death, an event allegedly causally related to Mrs. Ek's

_____

[7] We do not suggest that defendants' alleged conduct is comparable to this example. We posit it to illustrate the broad implications of defendants' argument on tort law.

30

alleged infection by the virus in the workplace, but under *Snyder*, not derivative of that infection.

Our holding accords with those of appellate courts of other jurisdictions on analogous facts. In *Woerth v. United States* (6th Cir. 1983) 714 F.2d 648 (*Woerth*), the plaintiff sued the United States government after he contracted hepatitis from his wife, who herself contracted the disease while employed as a nurse at a Veteran's Administration facility. (*Id.* at p. 649.) The district court dismissed the claim, concluding that, although the plaintiff was not an employee of the government, his injury was subject to the exclusive remedy provision of the Federal Employee's Compensation Act (FECA). (*Woerth*, at p. 649; see *Collins v. Plant Insulation Co.* (2010) 185 Cal.App.4th 260, 272 [FECA is "an alternative compensation system for federal employees . . . akin to the alternative compensation system provided by the California's workers' compensation law."].) In so concluding, the district court relied upon federal cases holding that FECA barred claims for loss of consortium by a government employee's spouse. (*Woerth*, at p. 649.)

The Sixth Circuit reversed, stating the proper question for FECA preclusion is "whether the claim is 'with respect to the injury or death of an employee.' While Woerth's hepatitis may derive from his wife as a matter of proximate cause, his cause of action does not. His right to recover for the negligence of the United States is based upon his own personal injury, not a right of 'husband and wife' [as it would be in a claim for loss of consortium]. The fact that the disease was transmitted through his spouse does not place Woerth in a position different from that of any other unrelated, but similarly injured tort victim." (*Woerth*, *supra*, 714 F.2d at p. 650.)

In *Vallery v. Southern Baptist Hosp.* (La.App. 4th Cir. 1993) 630 So.2d 861 (*Vallery*), a hospital security guard was exposed to the human immunodeficiency virus (HIV) by a patient. (*Id.* at pp. 862–863.) The guard, not yet aware he had been exposed to the virus, had sexual relations with his wife that evening. (*Id.* at p. 862.) Although neither the guard nor his wife ultimately contracted the virus, they sued the hospital for their emotional distress and "for loss of consortium due to their having to use condoms for a year" while being routinely tested for HIV. (*Id.* at p. 863.)

The trial court dismissed the suit, concluding the claims were barred by the exclusive remedy provision of the workers' compensation statute. (*Vallery, supra*, 630 So.2d at p. 862.) The Louisiana Court of Appeal agreed with the trial court as to the guard's claims, and also as to the wife's claim for loss of consortium, "a claim that arises due to the injury to her husband." (*Id.* at pp. 864–865.)

"However, Mrs. Vallery's claim for injury to her, i.e. exposure of Mrs. Vallery to HIV, is not an 'injury' referred to in the worker's compensation statute. [Citation.] It is self-evident that the worker's compensation scheme is to provide an exclusive remedy in the form of worker's compensation with regard to injuries to employees and not with regard to injuries to the spouses or other 'dependents' or 'relations' of employees. If Mrs. Vallery had been visiting her husband at work at the hospital, and a hospital employee had negligently injured both of them, no one would suggest that Mrs. Vallery's claim for her injury would be subject to the 'exclusive remedy' provision of the

32

worker's compensation statute even though her husband's claim would be."[8] (*Vallery, supra,* 630 So.2d at p. 865.)

Amici contend that the trial court's ruling in the instant case is an "outlier" that "conflicts with the decisions of every other court that has addressed claims arising from alleged COVID-related injuries in the workplace." In support, amici cite trial court rulings from other jurisdictions. As we discuss more fully below, the cited rulings either were decided on grounds other than workers' compensation preemption, or do not sufficiently address the issues raised in the instant case to be persuasive.[9]

In *Kuciemba v. Victory Woodworks, Inc.,* the United States District Court for the Northern District of California dismissed a complaint against an employer alleging that an employee contracted COVID-19 in the workplace, then infected his wife who developed a severe case of the disease. In the first dismissal order, the court stated that the claims were "barred by the exclusive remedy provisions of California's workers' compensation statutes," citing sections 3600 and 3602. (N.D.Cal., Feb. 22, 2021, No. 3:20-cv-09355-MMC.)

After the plaintiffs amended their complaint, the court dismissed the claims with prejudice, stating again that the claims were barred by WCA exclusivity to the extent they were "based

---

[8] *Vallery* relied in part on *Cushing,* the Louisiana fetal injury case cited favorably in *Snyder.* (See *Vallery, supra,* 630 So.2d at p. 865; *Snyder, supra,* 16 Cal.4th at pp. 1001–1002.)

[9] Defendants also cite these cases in arguing for the appropriateness of writ review, as well as other cases involving claims based on COVID-19. Defendants notably do not discuss the reasoning of any rulings in those cases.

33

on allegations that [the wife] contracted COVID-19 'through direct contact with' [the employee]." Plaintiffs also alleged that the wife "contracted COVID-19 'indirectly through fomites such as [the employee's] clothing," which the district court dismissed "for failure to plead a plausible claim." The court further found that the "defendant's duty to provide a safe workplace to its employees does not extend to nonemployees who . . . contract a viral infection away from those premises." (N.D.Cal., May 10, 2021, No. 3:20-cv-09355-MMC.)

Setting aside that we are not bound by federal district court rulings (*Mitchell v. State Dept. of Public Health* (2016) 1 Cal.App.5th 1000, 1009, fn. 4), the dismissal orders in *Kuciemba* are conclusory, with no explanations or discussion of relevant authority. They provide no basis upon which to question our holding.

In *Lathourakis v. Raymours Furniture Co., Inc.* (NY.Sup.Ct., Mar. 8, 2021, No. 59130/2020), the plaintiff alleged she contracted COVID-19 at the workplace and transmitted it to her mother and husband. The husband subsequently died from COVID-19. Plaintiff sought damages for her own illness and the emotional distress caused by the death of her husband. It does not appear the plaintiff sought damages for her husband's death apart from the emotional distress it allegedly caused her.

The trial court dismissed the complaint on the basis of workers' compensation exclusivity. The sole argument addressed by the court in its written order was whether the plaintiff sufficiently pleaded intentional conduct on the part of her employer to bring her claims outside the scope of the workers' compensation statute. Although the court mentioned in the summary of the allegations that the plaintiff's husband died, the

34

court did not discuss, nor did it indicate the plaintiff addressed, whether injuries arising from the husband's death should be treated differently than the injuries plaintiff suffered from her own illness for purposes of workers' compensation preemption. The case therefore is not instructive on the issues before us. (See *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 85, fn. 4 [" '[C]ases are not authority for propositions that are not considered.' [Citation.]"].)

*Estate of Madden v. Southwest Airlines Co.* (D.Md. June 23, 2021, 1:21-cv-00672-SAG) [2021 WL 2580119] and *Iniguez v. Aurora Packing Company, Inc.* (Ill.Cir.Ct., Kane County, Mar. 31, 2021, No. 20 L 372) [2020 WL 4734941], concerned suits against employers based on individuals who died allegedly from COVID-19 infections brought home from work by their employee spouses. The courts in these cases dismissed the complaints upon a finding that the employers owed no duty to the nonemployee decedents.

*Madden* did not address workers' compensation at all. *Iniguez* looked to the policies behind workers' compensation in its duty analysis, stating that "the relationship of employer/employee has . . . been codified limiting liability and damages pursuant to the Worker's Compensation Act," and that extending a duty to someone outside the employer-employee relationship "would completely disembowel the policy considerations" underlying that relationship. These cases plainly do not address what constitutes a derivative injury for purposes of workers' compensation preemption.

*Kurtz v. Sibley Memorial Hospital* (Md.Cir.Ct., Montgomery County, Mar. 25, 2021, No. 483758V) was a wrongful death action based on an employee contracting COVID-

19 at work and transmitting it to her husband, who died. The trial court dismissed the complaint on three bases: The Washington, D.C. wrongful death statute upon which the plaintiff relied was inapplicable because the husband contracted the disease in Maryland, the employer hospital owed no duty to the husband, and the hospital was shielded by statutory immunity. Workers' compensation exclusivity was not at issue.

In contrast to the cases cited by defendants and amici, both *Woerth* and *Vallery*, decisions by the Sixth Circuit and the Louisiana Court of Appeal, respectively, firmly support our holding. The trial court's ruling below was neither an outlier nor a deviation from the precedent articulated in *Snyder*.

Defendants and amici argue public policy concerns compel application of the derivative injury doctrine in this case. Defendants warn that given the prevalence of COVID-19, courts will be "overwhelmed by civil litigation brought by non-employee spouses and other family members." Amici go further, noting that in the absence of the derivative injury doctrine, claims may be brought not only by "the infected employee's family and friends who contract COVID-19, but also the family and friends of each of those individuals who become infected with the virus, and anyone else who might claim some derivative injury." Amici argue that "[s]uch a never-ending chain of derivative injuries and unchecked liability is antithetical to the WCA."

Defendants further note the difficulties of proof these cases create, particularly as to causation, which defendants contend is "exactly the sort of complex civil litigation issues that [WCA] exclusivity was adopted to avoid."

Whatever may be said of these public policy concerns, any extension of the " 'compensation bargain' " to encompass the third

36

party injuries at issue here is "more properly addressed to the Legislature than to this court." (*Snyder*, *supra*, 16 Cal.4th at p. 1004.) We cannot distort the derivative injury doctrine as articulated in *Snyder* to address these policy concerns.

The unique factual and legal issues presented by the ongoing pandemic will not inexorably lead to unlimited liability. Unaddressed in this writ proceeding is whether defendants owe a duty of care to nonemployees infected with COVID-19 as a result of an employee contracting the disease at work. (See, e.g., *Kesner*, *supra*, 1 Cal.5th at pp. 1142–1143 [applying the factors from *Rowland v. Christian* (1968) 69 Cal.2d 108 to "determine whether an employer has a duty to members of an employee's household to prevent take-home asbestos exposure"].) That analysis would include an assessment of "public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief." (*Kesner*, at p. 1145.) We express no opinion on the question of duty apart from that it would appear worthy of exploration.

Finally, we emphasize that today's holding is based on our interpretation of the WCA and case law applying that statutory scheme. Our analysis of issues such as causation and derivative injuries is limited to that context, and is not intended to apply more generally to principles of civil litigation.

## DISPOSITION

The petition is denied.  Real parties in interest shall recover their costs with regard to this writ proceeding.

CERTIFIED FOR PUBLICATION.

BENDIX, Acting P. J.

We concur:

CHANEY, J.

CRANDALL, J.<sup>*</sup>

---

    **\*** Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.